| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Kelly A. Sweeney, SBN 239613<br>Glenn C. Kelble, SBN 162935<br>Luis F. Chaves, SBM 358441<br>Sweeney & Kelble APC<br>515 S. Flower St., 18th Floor<br>Los Angeles, CA 90071, Tel. (310) 955-4050<br>kelly@ksgklaw.com; glenn@ksgklaw.com;<br>luis@ksgklaw.com<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:*Movant | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -  LOS ANGELES DIVISION**

| In re:<br><br>Orange Courier, Inc. | CASE NO.: 2:25-bk-20443-DS<br><br>CHAPTER: 11 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br>**(PERSONAL PROPERTY)** |
| Debtor(s). | DATE: 02/19/2026<br>TIME: 1:00 pm<br>COURTROOM: 1639 |

**Movant:** Envision Capital Group, LLC

1. **Hearing Location**:

   ☒ 255 East Temple Street, Los Angeles, CA 90012          ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367   ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (if any)(Responding Parties), their attorneys (if any), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay, as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                   Page 1                          **F 4001-1.RFS.PP.MOTION**

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒  This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file a written response to this motion with the court and serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the hearing and appear at the hearing of this motion.

7.  ☐  This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a.  ☐  An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b.  ☐  An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c.  ☐  An application for order setting hearing on shortened notice and remains pending.  After the court has ruled on that application, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  01/26/2026

Sweeney & Kelble APC
_____
Printed name of law firm (if applicable)

Luis F. Chaves
_____
Printed name of individual Movant or attorney for Movant


/s/ Luis F. Chaves
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO PERSONAL PROPERTY

1. Movant has a perfected security interest in the Property.

**Movant owns the Property at issue and leases the Property to the debtor.**

2. **The Property at Issue (Property):**

    (1) 2019 Landoll 440-50CA Trailer (VIN 1LH440VH1K1B27858);
    (2) 2013 Versa-Lift forklift 60-80 ATMB80-007 (SN 1819);

    a. ☒ Vehicle (*year, manufacturer, type, and model*): (3) Bendi B40VAC Forklift (B40VAC-6-2006A-12544)

    *Vehicle Identification Number:* see above (1) 2019 Landoll 440-50CA Trailer
    *Location of vehicle (if known):* 16222 Phoebe Ave. La Mirada, CA 90638

    b. ☒ Equipment (*manufacturer, type, and characteristics*):

    *Serial number(s):* (2) 2013 Versa-Lift forklift 60-80 ATMB80-007 (SN 1819); (3) Bendi B40VAC Forklift (B40VAC-6-2006A-12544)

    *Location (if known):* 16222 Phoebe Ave. La Mirada, CA 90638

    c. ☐ Other Personal Property (*type, identifying information, and location*):

3. **Bankruptcy Case History:**

    a. ☒ A voluntary bankruptcy petition  ☐ An involuntary bankruptcy petition
    under chapter  ☐ 7  ☒ 11  ☐ 12  ☐ 13  was filed on (*date*)  11/21/2025  .

    b. ☐ An order to convert this case to chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13  was entered on (*date*) _____.

    c. ☐ Plan was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

    a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:

    (1) ☒ Movant's interest in the Property is not adequately protected.

        (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

        (B) ☒ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

        (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with Debtor.

        (D) ☒ Other (*see attached continuation page*).    Lease payments are in default.

    (2) ☐ The bankruptcy case was filed in bad faith.

        (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

(B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

(C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

(D) ☐ Other bankruptcy cases were filed in which an interest in the Property was asserted.

(E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

(3) ☐ (*Chapter 12 or 13 cases only*) All payments on account of the Property are being made through the plan and plan payments have not been made to the chapter 12 or chapter 13 trustee for payments due ☐ postpetition preconfirmation ☐ postpetition postconfirmation.

(4) ☒ The lease has matured, been rejected or deemed rejected by operation of law.

(5) ☐ The Debtor filed a statement of intention that indicates the Debtor intends to surrender the Property.

(6) ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

(7) ☐ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to 11 U.S.C. § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

5. **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew that the bankruptcy petition had been filed and Movant would have been entitled to relief from stay to proceed with those actions,

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions,

c. ☐ Other (*specify*):


6. ☐ **Evidence in Support of Motion: *(Declaration(s) must be signed under penalty of perjury and attached to this motion)***

a. The PERSONAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☐ The statements made by the Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in the Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit(s) _____.

d. ☐ Other:


7. **An optional Memorandum of Points and Authorities is attached to this motion.**

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014    Page 4    F 4001-1.RFS.PP.MOTION

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☒ 11 U.S.C. § 362(d)(1)   ☐ 11 U.S.C. § 362(d)(2)

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to repossess and sell the Property.

3. ☐ Confirmation that there is no stay in effect.

4. ☐ The stay is annulled retroactive to the petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) is § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7. ☐ The order is binding in any other bankruptcy case purporting to affect the Property filed not later than 2 years after the date of entry of such order, except that a debtor in a subsequent case may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

8. ☐ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

9. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days, so that no further stay shall arise in that case as to the Property.

10. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be
    ☐ without further notice, or   ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☒ If relief from stay is not granted, the court orders adequate protection.

12. ☐ See continuation page for other relief requested

Date:  01/26/2026

| | |
|---|---|
| | Sweeney & Kelble APC |
| | Print name of law firm |
| | |
| | Luis F. Chaves |
| | Print name of individual Movant or attorney for Movant |
| | |
| | /s/ Luis F. Chaves |
| | Signature of individual Movant or attorney for Movant |

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 5                            **F 4001-1.RFS.PP.MOTION**

# PERSONAL PROPERTY DECLARATION

I, (*name of declarant*) Christian Jauregui_____, declare:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have knowledge regarding Movant's interest in the Property (*specify*):

    a. ☐ I am the Movant.

    b. ☒ I am employed by Movant as (*title and capacity*): Portfolio Manager and Custodian of Records

    c. ☐ Other (*specify*):

2.  a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans, leases, or extensions of credit given to Debtor concerning the Property.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

    b. ☐ Other (see attached):

3.  The Property is:   Three items of leased equipment [numbered (1)-(3)] as follows:

    a. ☒ Vehicle (*year, manufacturer, type, model and year*): (1) 2019 Landoll 440-50CA Trailer (VIN 1LH440VH1K1B27858);
    (2) 2013 Versa-Lift forklift 60-80 ATMB80-007 (SN 1819);
    (3) Bendi B40VAC Forklift  (B40VAC-6-2006A-12544)

    *Vehicle Identification Number:* see above (1) 2019 Landoll 440-50CA Trailer
    *Location of vehicle (if known):* 16222 Phoebe Ave. La Mirada, CA 90638

    b. ☒ Equipment (*manufacturer, type, and characteristics*):

    *Serial number(s):* (2) 2013 Versa-Lift forklift 60-80 ATMB80-007 (SN 1819); (3) Bendi B40VAC Forklift
    *Location (if known):* 16222 Phoebe Ave. La Mirada, CA 90638

    c. ☐ Other personal property (*type, identifying information, and location*):

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4. The nature of Debtor's interest in the Property is:

    a. ☐ Sole owner

    b. ☐ Co-owner (*specify*):

    c. ☒ Lessee

    d. ☐ Other (*specify*):

    e. ☐ Debtor ☐ did ☐ did not  list the Property in the schedules filed in this case.

5. ☒ The lease matured or was rejected on (*date*) <u>various dates</u> :(see below)

    a. ☐ rejected          Lease (1) 2019 Landoll 440-50CA Trailer, Matured 8/12/2024-----See Exhibit 1

                             Lease (2) 2013 Versa-Lift forklift 60-80 ATMB80-007, Matured 3/10/25----See Exhibit 2

        (1) ☐ by operation of law.   Lease (3) Bendi B40VAC Forklift, Matured 11/13/2025----See Exhibit 3

        (2) ☐ by order of the court.

    b. ☒ matured.

6. Movant has a perfected security interest in the Property.

    a. ☒ A true and correct copy of the <u>~~promissory note~~</u> **Leases** or other document that evidences the debt owed by the Debtor
             to Movant is attached as Exhibit <u>1-3</u> .

    b. ☐ The Property is a motor vehicle, boat, or other personal property for which a certificate of title is provided for
             by state law. True and correct copies of the following items are attached to this motion:

        (1) ☐ Certificate of title ("pink slip") (Exhibit _____).

        (2) ☒ Vehicle or other lease agreement (Exhibit <u>1-3</u> ).   **Leases**

        (3) ☐ Security agreement (Exhibit _____).

        (4) ☐ Other evidence of a security interest (Exhibit _____).

    c. ☐ The Property is equipment, intangibles, or other personal property for which a certificate of title is not provided
             for by state law. True and correct copies of the following items are attached to this motion:

        (1) ☐ Security agreement (Exhibit _____).

        (2) ☐ UCC-1 financing statement (Exhibit _____).

        (3) ☐ UCC financing statement search results (Exhibit _____).

        (4) ☐ Recorded or filed leases (Exhibit _____).

        (5) ☒ Other evidence of perfection of a security interest (Exhibit <u>1-3</u> ).   **Leases**

    d. ☐ The Property is consumer goods.  True and correct copies of the following items are attached to this motion:

        (1) ☐ Credit application (Exhibit _____).

        (2) ☐ Purchase agreement (Exhibit _____).

        (3) ☐ Account statement showing payments made and balance due (Exhibit _____).

        (4) ☐ Other evidence of perfection of a security interest (*if necessary under state law*) (Exhibit _____).

    e. ☐ Other liens against the Property are attached as Exhibit _____.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*　　　　　　　　　　　　　　　Page 7　　　　　　　　　**F 4001-1.RFS.PP.MOTION**

7.  Status of Movant's debt:

        (1) $2,165,31
        (2) $6,396.41 (or $19,189.23 ea. qtr.)

a.  The amount of the monthly payment: $  10,814.55 .

        (3) $2,252.83
        TOTAL $10,814.55 (without late fees)

b.  Number of payments that became due and were not tendered:  ☒ prepetition ☒ postpetition.

c.  Total amount in arrears: $  59,246.34  (1) $7,438.86, (2) $44,035.22, (3) $7,772.26 = $59,246.34 (pre- and post-petition)

d.  Last payment received on (*date*):   Leases (1) & (3) Oct. 1, 2025; Lease (2) June 15, 2025

e.  Future payments due by the anticipated hearing date (*if applicable*):  03/01/2026 
An additional payment of $  10,814.55  will come due on (*date*)  03/01/2026 , and on
the  1st  day of each month thereafter.  If the payment is not received by the      
day of the month, a late charge of $  1,622.03  will be charged under the terms of the ~~loan.~~ leases.

8.  ☒  Attached as Exhibit  4  is a true and correct copy of a POSTPETITION payment history that accurately
reflects the dates and amounts of all payments made by the Debtor since the petition date.

9.  Amount of Movant's debt:

a.  Principal:.......................................................................................................... $             
b.  Accrued interest: .............................................................................................. $             
c.  Costs (attorney's fees, late charges, other costs):................................................. $             
d.  Advances (property taxes, insurance): ................................................................ $             
e.  TOTAL CLAIM as of       :.................................................................. $             

10. ☐  (*Chapter 7 and 11 cases only*) Valuation: The fair market value of the Property is: $           .
This valuation is based upon the following supporting evidence:

a.  ☐  This is the value stated for property of this year, make, model, and general features in the reference guide
most commonly used source for valuation data used by Movant in the ordinary course of its business for
determining the value of this type of property.  True and correct copies of the relevant excerpts of the most
recent edition of the reference guide are attached as Exhibit     .

b.  ☐  This is the value determined by an appraisal or other expert evaluation.  True and correct copies of the
expert's report and/or declaration are attached as Exhibit     .

c.  ☐  The Debtor's admissions in the Debtor's schedules filed in the case.  True and correct copies of the relevant
portions of the Debtor's schedules are attached as Exhibit     .

d.  ☐  Other basis for valuation (*specify*):

---

**NOTE:**  If valuation is contested, supplemental declarations providing additional foundation for the
opinions of value should be submitted.

---

11. Calculation of equity in Property:

a.  ☐  **11 U.S.C. § 362(d)(1) - Equity Cushion:**

I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s)
senior to Movant's debt is $         and is    % of the fair market value of the
Property.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

b. ☐ **11 U.S.C. § 362(d)(2)(A) - Equity**:

By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 10 above, I calculate that the Debtor's equity in the Property is $ _____.

12. ☐ The fair market value of the Property is declining because:

13. ☐ The Debtor's intent is to surrender the Property.  A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

14. ☐ Movant regained possession of the Property on (*date*) _____, which is:  ☐ prepetition.  ☐ postpetition.

15. ☐ (*Chapter 12 or 13 cases only*) Status of Movant's debt and other bankruptcy case information:

a. The 341(a) meeting of creditors is currently scheduled for (or concluded on) (*date*) _____
A plan confirmation hearing is currently scheduled for (or concluded on) (*date*) _____
The plan was confirmed on (*if applicable*) (*date*) _____

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID after the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postconfirmation payments due BUT REMAINING UNPAID after the plan confirmation date (*if applicable*):

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                                    $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:                                                                            $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:                                         $ [                    ]

TOTAL POSTPETITION DELINQUENCY:                              $

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                   Page 9                                   **F 4001-1.RFS.PP.MOTION**

g. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. The plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

16. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with Debtor.

17. ☐ The bankruptcy case was filed in bad faith:

a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

c. ☐ The Debtor filed only a few case commencement documents.  Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

d. ☐ Other (*specify*):


18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

b. ☐ Multiple bankruptcy cases affecting the Property:

(1) Case name: _____
   Chapter: _____    Case number: _____
   Date filed: _____    Date discharged: _____    Date dismissed: _____
   Relief from stay regarding the Property ☐ was  ☐ was not  granted.

(2) Case name: _____
   Chapter: _____    Case number: _____
   Date filed: _____    Date discharged: _____    Date dismissed: _____
   Relief from stay regarding the Property ☐ was  ☐ was not  granted.

(3) Case name: _____
   Chapter: _____    Case number: _____
   Date filed: _____    Date discharged: _____    Date dismissed: _____
   Relief from stay regarding the Property ☐ was  ☐ was not  granted.

☐ See attached continuation page for more information about other bankruptcy cases affecting the Property.

☐ See attached continuation page for additional facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

b.  ☐  Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c.  ☐  For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/28/2024 | Christian Jauregui | | |
|---|---|---|---|
| *Date* | *Printed Name* | | *Signature* |

Exhibit 1

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Orange Courier, Inc. |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:25-bk-20443-DS |

Official Form 410

# Proof of Claim

04/25

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

## Part 1:   Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | ENVISION CAPITAL GROUP LLC <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☑ No <br> ☐ Yes.  From whom? _____ |

| 3. Where should notices and payments to the creditor be sent? <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|---|
| | ENVISION CAPITAL GROUP LLC <br> c/o Sweeney and Kelble <br> Name | ENVISION CAPITAL GROUP LLC c/o Chris Jauregui <br> Name |
| | 515 S. Flower St., 18th Floor <br> Number      Street | 29982 Ivy Glenn Dr Fl 1 <br> Number      Street |
| | Los Angeles      CA      90071 <br> City      State      ZIP Code | Laguna Niguel      CA      92653 <br> City      State      ZIP Code |
| | Contact phone  (310) 955-4050 <br> Contact email  kelly@ksgklaw.com | Contact phone  949-225-1740 <br> Contact email  chris@ecgllc.com |
| | Uniform claim identifier (if you use one): <br> __ __ __ __ __ — __ __ __ __ __ — __ __ __ __ __ — __ __ __ __ __ | |

| 4. Does this claim amend one already filed? | ☑ No <br> ☐ Yes.  Claim number on court claims registry (if known) _____      Filed on ____ / __ / ____ <br>                                                                                                   MM  /  DD  /  YYYY |
|---|---|
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No <br> ☐ Yes.  Who made the earlier filing? _____ |

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:   1   2   1   9

**7. How much is the claim?**   $_____ 7,438.86 .* **Does this amount include interest or other charges?**

Plus fair market value of equipment to be determined.

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____Equipment Lease on 2019 Landoll 440-50CA Trailer_____

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**                    $_____

**Amount of the claim that is secured:**    $_____

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☐ No

☑ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____ 2,489.96

Due for 11/01/2025 ($2,165.31 + $324.65 late fees)

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*                                                     **Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).                                   $_____

☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).         $_____

☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).                                                     $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).        $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.        $_____

\* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  01/20/2026
                  MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | | |
|---|---|---|
| Name | Chris Jauregui | |
| | First name       Middle name       Last name | |
| Title | Portfolio Manager | |
| Company | ENVISION CAPITAL GROUP LLC | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | |
| Address | 29982 Ivy Glenn Dr Fl 1 | |
| | Number      Street | |
| | Laguna Niguel         CA         92677 | |
| | City                  State      ZIP Code |
| Contact phone | (949) 225-1740         Email  chris@ecgllc.com |

# Statement

1-Lease #081219EL1-J01 (AEF)
2019 Landoll 440-50CA Trailer
Mo. Pmt. $2,165.31 + $324.65 late fees
Dates Past due for 11/1/2025,12/12026

Past Due Total $6,462.93
Late Fees $973.93
Grand Total $7,438.86*

*Plus fair market value of equipment to be determined.

_____

2-Lease #030620EL1-C02 (Quarterly Pmts.)
2013 Versa-Lift forklift 60-80 ATMB80-007 (SN 1819)
Quarterly Pmt. $19,189.23 + $2,878.38 late fees
Dates Past due for 9/15/2025,12/1/2025

Past Due Total $38,378.46
Late Fees $5,756.76
Grand Total $44,035.22*

*Plus fair market value of equipment to be determined.

_____

3-Lease #102020EL1-C03 (AEF)
Bendi B40VAC Forklift Purch Price
Mo. Pmt. $2,165.31 + $337.92 late fees
Dates Past due for 11/1/2025, 12/1/2025, 1/1/2026

Past Due Total $6,758.49
Late Fees $1,013.77
Grand Total $7,772.26*

*Plus fair market value of equipment to be determined.

# Envision ▶
## CAPITAL GROUP LLC

| | |
|---|---|
| **ENVISION CAPITAL GROUP LLC (Lessor)**<br>23422 Mill Creek Drive, Suite 200<br>Laguna Hills, CA 92653<br>P 949.225.1700  F 888.779.6987<br>P 888.779.6989  F 888.779.6987 | **LEASE AGREEMENT**<br>ECG.av 050217.AEI-<br><br>**LEASE NUMBER**<br>081219EL1-J01 |

| | |
|---|---|
| **Full Legal Name and Address of Lessee**<br>ORANGE COURIER, INC.<br>**3731 W WARNER AVE**<br>**SANTA ANA, CA 92704-5218** | **Name and Address of Equipment Supplier**<br>**See Exhibit "A" attached hereto and made a part hereof.** |
| **Lessee Phone Number**<br>(714) 384-3600 | **Lessee Tax ID**<br>33-0543963 | **Equipment Supplier Phone Number**<br>**See Exhibit "A" attached hereto and made a part hereof.** |

| Quantity | Equipment Description |
|---|---|
| 1 | 2019 LANDOLL 440B-50CA TRAILER VIN # 1LH440VH1K1B27858 |

| Monthly Rent<br>(Plus applicable taxes):<br>$1,959.56 | Base Term in<br>Months:<br>60 | Deposit:<br>$14,000.00 | Deposit Applied To:<br>**Capital Cost<br>Reduction +<br>First & Last 5 (Five)<br>Monthly Rentals** | Documentation Fee:<br>Bill for $495.00 | End of Term:<br>**Fair Market Value<br>Purchase Option (FMV)** |
|---|---|---|---|---|---|

| Location (if other than billing address of lessee) | City | State | Zip |
|---|---|---|---|

Please read your copy of this Lease Agreement and any schedules attached (Lease) carefully and feel free to ask us any questions you may have about it. We have written the Lease in plain language because we want you to fully understand its terms. For purposes of this Lease, you and your shall mean the Lessee indicated above, and we, us and our refer to the Lessor, ENVISION CAPITAL GROUP LLC, its agents and employees and its successors and assigns.

| | |
|---|---|
| **The undersigned agrees that this lease reflects the agreement of the parties, including all terms of the reverse side of this document.**<br><br>AGREED:<br>Legal Name<br>ORANGE COURIER, INC.<br><br>By: _Evell Tara S_<br>EVELL TARA STANLEY<br>PRESIDENT<br>Date: **August 12, 2019**<br><br>AGREED: **ENVISION CAPITAL GROUP LLC**<br>Signature _____ Title<br>_____ **Managing Member**<br>Date ___AUG 28 2019___ | **Company Resolution:** I, EVELL TARA STANLEY, the duly elected and qualified Secretary of ORANGE COURIER, INC. (the "Company"), hereby certify that Company's exact legal name, state of incorporation/organization, location of its chief executive office and/or its place of residence, as applicable, have been correctly identified to Lessor, and that at a duly constituted meeting of the Board of Directors/Members/Partners of the Company, the Board resolved that EVELL TARA STANLEY PRESIDENT, in his/her capacity as is authorized for, on behalf of and in the name of this Company, to negotiate, procure and execute such Lease Agreements and any other documents in connection with same, which in his/her opinion are necessary or advisable to effectuate the most favorable interests of the Company, and the execution of such documents by said officer shall be conclusive evidence of his/her approval thereof.<br>IN WITNESS WHEREOF, I have affixed my name as Secretary of the Company on August 12, 2019.<br><br>Legal Name ... Date<br>**EVELL TARA STANLEY** ... **August 12, 2019**<br>... Title<br>_Evell Tara S_ ... Secretary |

**LEASE GUARANTY** In consideration of Lessor entering into the above Lease in reliance on this Guaranty, the undersigned, jointly and severally, unconditionally and irrevocably guarantee to Lessor and to any assignee of Lessor, the prompt payment and performance of all of Lessee's obligations under the above Lease and all existing and future Agreements between Lessor and Lessee. The undersigned agree(s): (a) that this is a guarantee of payment and not of collection and that Lessor or its assignee may proceed directly against the undersigned without disposing of any security or seeking to collect from Lessee; (b) to waive all defenses and notices, including those of protest, presentment and demand; (c) that Lessor may extend or otherwise change the terms of the Lease without notice to the undersigned; and (d) to pay all of Lessor's costs of enforcement and collection. This guarantee survives the bankruptcy of the Lessee and binds the undersigned's administrators, successors and assigns. IF THE ABOVE LEASE IS ASSIGNED BY LESSOR, THE UNDERSIGNED AGREE(S) THAT ANY DISPUTE ARISING UNDER OR RELATED TO THIS GUARANTY ILL BE ADJUDICATED IN THE FEDERAL OR STATE COURT WHERE THE ASSIGNEE'S CORPORATE HEADQUARTERS IS LOCATED AND WILL BE GOVERNED BY THE LAW OF THAT STATE. THE UNDERSIGNED HEREBY CONSENT(S) TO PERSONAL JURISDICTION AND VENUE IN THAT COURT AND WAIVE(S) ANY RIGHT TO TRANSFER VENUE. EACH OF THE UNDERSIGNED WAIVES ANY RIGHT TO A TRIAL BY JURY.

Signature<br>By: _Evell Tara S_<br>Name: **EVELL TARA STANLEY**<br>Date: **August 12, 2019**

**1. LEASE:** You agree to lease from us and we agree to lease to you, the equipment listed above or on any schedule to this Lease (Equipment). You unconditionally promise to pay us the sum of all of the rental and other payments indicated above or on any schedule (Rent). You authorize us to insert in this lease any serial numbers and other identification data about the Equipment, as well as any other omitted factual matters. All Rent and other payments under this Lease or any other agreement with us (collectively Obligation or Obligations) are payable in U.S. dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs.

**2. TERM OF LEASE:** This Lease shall become effective upon acceptance by us by signing and dating this Lease. **A prorata portion of the aggregated average of the Rent based on a daily charge of one-thirtieth (1/30) of the Rent from the Commencement Date to the end of the month shall be payable at the Commencement Date.** The Commencement Date shall be the earlier of the date that the Lessee Executes the Certificate of Acceptance or Lessor first determines Lessee uses an item of the Equipment. The Base Term of this Lease shall begin on the first day of the month following the Commencement Date and terminate upon the expiration of the number of months stated under Base Term, above. Following the Commencement Date, Rent and other Obligation payments are due on the first of each month, payable to a location to be designated in writing. **YOUR OBLIGATION TO PAY RENT TO US IS UNCONDITIONAL AND NOT SUBJECT TO ANY REDUCTION, SET-OFF, DEFENSE, OR COUNTERCLAIM AND MAY NOT BE CANCELED FOR ANY REASON WHATSOEVER, INCLUDING WITHOUT LIMITATION ANY MALFUNCTION OR ABILITY TO USE ANY ITEM OF THE EQUIPMENT.** In the event this Lease is not fully completed for any reason beyond our control, all deposits made by you will be retained by us as compensation for documentation, processing and other expenses. We have the right, but not the obligation, to electronically withdraw funds from your bank account to pay for any unpaid Rent, taxes, fees, charges and assessments. You will provide us with any bank account information we request in order to process electronic payments. You may revoke our authorization to electronically withdraw funds by giving us ten (10) days prior written notice.

**3. NO WARRANTIES; NO AGENCY: WE ARE LEASING THE EQUIPMENT TO YOU AS IS. LESSOR DISCLAIMS AND MAKES NO REPRESENTATIONS AND WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF NON-INFRINGEMENT, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OR ORDINARY USE IN CONNECTION WITH THIS LEASE.** You understand and agree that we are independent from the vendor, manufacturer and/or supplier (Supplier) of the Equipment and that neither the Supplier nor any other person is our agent, nor are they authorized to waive or change any term or condition of this Lease. You agree that no representation, guaranty or warranty by the Supplier or other person is binding on us. So long as you are not in default under any of the terms of this Lease, we transfer to you any warranties made to us, as the owner of the Equipment, by the Supplier. You agree that any breach by the Supplier will not relieve or excuse your obligations to us. Regardless of cause, you will not assert any claim whatsoever against us for loss of profits you expected to make or any other direct, consequential, special or indirect damages. If you have entered into a maintenance agreement for the Equipment and the cost of the maintenance is included in the

Rent, you acknowledge that we are not responsible for any service, repairs, or maintenance of the Equipment, and that we are not a party to the maintenance agreement. If you have a dispute regarding maintenance or service, then you will nevertheless continue to pay all Obligations as they become due.

**4. UCC-ARTICLE-2A:** You agree that this Lease is a "Finance Lease" under Article 2A of the Uniform Commercial Code as adopted by the State of California (UCC). You acknowledge that: (a) we did not select manufacture or supply the Equipment but at your request we have purchased the Equipment for lease to you; and (b) based solely on your own judgment, you have selected the Supplier and the Equipment that you are leasing from us. You agree that you have approved any purchase or supply contract between us and the Supplier before signing this Lease; or, if you have entered into a purchase contract for the Equipment, you agree to assign it to us effective when we pay for the Equipment. You may have rights under the supply or purchase contract, and you may contact the Supplier for a description of those rights or any warranties. To the extent permitted by applicable law, **YOU WAIVE ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON YOU UNDER UCC §§ 2A-303 AND 2A-508 THROUGH 2A-522, INCLUDING WITHOUT LIMITATION, THE RIGHT TO: (i) REPUDIATE THE LEASE AND REJECT THE EQUIPMENT; (ii) REVOKE ACCEPTANCE OF THE LEASE; OR (iii) RECOVER DAMAGES FROM US FOR ANY BREACH OF WARRANTY.** For purposes of perfection of a security interest in chattel paper under the UCC, only the counterpart of this Lease that bears Lessor's manually applied signature and is marked "Sole Original" by Lessor shall constitute the sole original counterpart of the original chattel paper for purposes of possession. No security interest in this Lease can be perfected by possession of any other counterpart, each of which shall be deemed a duplicate original or copy for such purposes.

**5. DELIVERY OF EQUIPMENT:** You agree to accept the Equipment when it is delivered and to sign the Equipment Acceptance supplied by us. We may at our discretion confirm by telephone that you have accepted the Equipment and this telephone verification of your acceptance of the Equipment shall have the same effect as a signed Equipment Acceptance.

**6. ASSIGNMENT:** You may not sell, transfer, assign or sublease the Equipment without our prior written approval. We may sell, assign or transfer this Lease, or any part of it, and/or ownership of the Equipment without notifying you; and you agree that if we do, the new Lessor will have the same rights and benefits that we now have, and will not have to perform any of our obligations. You agree that the rights of the new Lessor will not be subject to any claims, defenses or setoffs that you may have against us. However, any such assignment sale, or transfer of this Lease or the Equipment will not relieve us of our obligations to you under this Lease.

**7. OWNERSHIP, RIGHTS, AND QUIET ENJOYMENT:** You agree that we are the owner and have title to the Equipment. You agree, at your expense, to protect and defend our title and other rights to the Equipment. Further, you agree that you will at all times keep the Equipment free from all legal process and liens and you shall give us immediate notice if any legal process or lien is asserted or made against you or the Equipment. You shall have the right to quiet use and enjoyment of the Equipment for the term of this Lease, provided you are not in default. We also have the right, at reasonable times, to inspect the equipment at your expense.

ECG_av.050217_AEF

Page 2 of 5

Lease Agreement # 081219EL1-J01

Initial  

**8. CARE, USE AND LOCATION; LOSS OF EQUIPMENT:** You are responsible for installing and keeping the Equipment in good working order and repair. You will keep and use the Equipment only at your address shown on this Lease, only for business or commercial purposes and in compliance with all applicable laws, ordinances or regulations. You will not make any alterations to the Equipment without our prior written consent, nor will you permanently attach the Equipment to any real estate. You are responsible for protecting the Equipment from damage, and from any other kind of loss while you have the Equipment or while it is being delivered to you. In the event the Equipment is lost, stolen or damaged, so long as you are not in default under this Lease, then at the sole discretion of the Lessor, you shall have the option within one week of such event to: (a) repair or replace the Equipment or (b) pay to us the unpaid balance of the remaining Rent under this Lease and Lessor's estimate of the residual value at the end of the Base Term, plus Lessor's interest in the Equipment, discounted to present value at the rate of four percent (4%) plus any Other Obligations.

**9. TAXES AND FEES:** You agree to pay when due all taxes, fees, fines, assessments and penalties relating to this Lease, including, without limitation, documentation fees, filing fees, credit fees, equipment inspection fees, early termination or assumption fees, title fees, name change fees, sales or property taxes, use taxes and business taxes. You also agree that we may estimate the yearly personal property taxes that will be due for the Equipment, and you agree to pay us the estimated taxes together with a processing fee as invoiced by us. If we pay any taxes, fines or penalties for you, you agree to reimburse us, together with a processing fee, on demand.

**10. INDEMNITY:** We are not responsible for any injuries or losses to you or any other person or property caused by the installation, operation, maintenance or use of the Equipment. You agree to reimburse us for and defend us against any claim, losses, or injuries arising from the Equipment or as a result of the Lease, including, without limitation, those arising out of the negligence, tort or strict liability claims. This indemnity shall continue even after the term of this lease has expired.

**11. COLLATERAL PROTECTION AND INSURANCE:** You agree to keep the equipment fully insured against loss with us as lender loss payee in an amount not less than the replacement cost until this Agreement is terminated. You also agree to obtain a general public liability insurance policy from anyone who is acceptable to us and to include us as an "Additional Insured" on the policy. You agree to provide us certificates or other evidence of insurance acceptable to us before this Agreement begins. If you fail to provide proof of such insurance we may, but are not obligated to, acquire insurance on your behalf for which you agree to pay the insurance premium as well as an administrative fee which may provide a profit to us. NOTHING IN THIS PARAGRAPH WILL RELIEVE YOU OF YOUR RESPONSIBILITY FOR LIABILITY INSURANCE COVERAGE ON THIS EQUIPMENT.

**12. DEFAULT AND REMEDIES:** If you: (A) do not pay any Obligation when due; (B) break any of your promises, representations or covenants under this Lease or under any other agreement with us; (C) become insolvent assign your assets for the benefit of your creditors; (D) or any guarantor enters (voluntarily or involuntarily) into a bankruptcy proceeding; (E) default on any obligations to any of your other creditors; (F) have made any representations to us with respect to any information provided in connection with this Lease or any other agreement with us that is not truthful at the time it is made or have omitted any material information with respect to your assets or liabilities, or any other information that would be considered material in the extension of credit; (G) are a corporation and more than 20% of the issued and outstanding voting capital stock is transferred to or acquired by any person or entity that is not an owner as of the date of this Lease; (H) any guarantor dies; or (I) you change your name, state of incorporation, chief executive office and/or place of residence without providing us with 30 days prior written notice of such change, you will be in default. In the event of a default by you, we can require that you return the Equipment to us and pay to us all accrued and unpaid rent, plus all future rental payments and Lessor's estimate of the residual value of the equipment at the end of the Term all discounted present value at four percent (4%), together with any other amounts due under this Lease. We can also require that you pay to us our residual interest in the Equipment. Interest shall accrue on all on all Obligations due us from the date of default until paid at the rate of four percent (4%) per annum, but only to the extent permitted by law. We shall also be entitled to recover from you all damages caused by that default, including any of our income tax benefits. We can also use any of the remedies available to us under the UCC or any other law, including repossession of the Equipment or other Collateral. You agree to reimburse us for all charges, costs, expenses and attorneys' fees that we have to pay to enforce this Lease or collect the Obligations under this Lease and in any lawsuit or other legal proceeding which we are required to bring or defend because of your default. You also agree that in the event of a dispute related to or arising out of this Lease, the Lessor in such dispute shall be entitled to recover its reasonable attorney's fees and costs. If we have to take possession of the Equipment, you agree to pay the cost of repossession, storing, shipping, repairing and selling the Equipment You agree that we do not have to notify you that we are selling the Equipment. You also agree that we are entitled to abandon the Equipment if we reasonably believe it to be in our best interests.

ECG.av 050217 AEF

**Envision** CAPITAL GROUP LLC

Page 3 of 5

Lease Agreement # 081219EL1-J01

Initial 

**13. OTHER RIGHTS:** Time is of the essence in this Lease. You agree that any delay or failure by us to enforce our rights under this lease or any other agreements shall not prevent us from enforcing any rights at a later time. Both parties intend this Lease to be a valid and legal document, and agree that if any part is determined to be unenforceable, all other parts will remain in full force and effect. If, contrary to the parties' intention, this Lease is held to create a security interest in any item, Rent for such item shall be reduced so that any interest portion is the highest rate permitted by applicable law. All interest due hereunder shall be reduced if required to equal the highest rate permitted by applicable law, provided, Lessee waives to the extent permitted by law, the right to seek such reduction. You also grant us a security interest in the Equipment and any proceeds of, accessions and attachments to the Equipment as security for your Obligations. You agree that we may obtain information from credit reporting agencies at any time. You agree that, at your expense, we may file financing statements or other related filings in our name or in the name of any agent designated by us in a separate agreement entered into by us without your consent or notice to you. You hereby authorize us, or our assigns, to file a financing statement without your signature, in form and content and from time to time as we deem proper, listing you as Lessee or Debtor. You appoint us or our designee as your attorney-in-fact to execute and file, on your behalf, financing statements covering the equipment or any other collateral. Any notice required by this Lease or the UCC shall be deemed to be delivered when a record properly directed to the intended recipient has been (a) deposited with the US Postal Service, (b) transmitted by facsimile, (c) transmitted through the Internet or (d) has been personally delivered.

**14. LESSEE REPRESENTATIONS AND WARRANTIES:** You represent and warrant that at the time you sign this Lease you are and shall remain a business entity duly organized, validly existing, and in good standing under the laws of the state of your organization, duly qualified to conduct business in every jurisdiction where you conduct business and are not subject to any bankruptcy proceeding and that your exact legal name, state of incorporation, location of your chief executive office and/or your place of residence as applicable, have been correctly identified to us. You further represent and warrant that at the time you sign this Lease the person executing this Lease or any related document on behalf of you or any related guarantor shall be authorized to take such action and bind you and the guarantor to the Lease, and that the execution, delivery and performance of this Lease is duly authorized by your organizational documents and, if necessary, resolutions of your directors and/or shareholders, partners, or managers and/or members. By providing a telephone number for a cellular phone or other wireless device, you are expressly consenting to receiving communications(for NON- marketing or solicitation purposes) at that number, including, but not limited to, prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system from Lessor and/or its assigns including affiliates and agents. This Express Consent applies to each such telephone number that you provide to us now or in the future and permits such calls. These calls and messages may incur access fees from your cellular provider.

**15. RETURN OF EQUIPMENT; RENEWAL:** If no default exists or has occurred under this Lease, you may, at the end of the original or any renewal term, purchase all (but not less than all) of the Equipment for a sum set forth on the front of this Lease, plus any applicable taxes. Unless the End of Term option price is **$101** or less, then at least **120** days prior to the end of the original term you must give us written notice via certified mail that you will purchase the Equipment or that you will return the Equipment to us. If you do not give us such written notice or if you do not purchase or deliver the equipment in accordance with the terms and conditions of this Lease, then this Lease shall automatically renew for a 6 month term, and thereafter renew for successive 3 month terms until you deliver the Equipment to us. During such renewal(s), the Rent shall be the highest monthly rate set forth in this Lease. We may cancel the renewal by sending you written notice **90** days prior to such renewal term. If the Fair Market Value Purchase Option has been selected, we will use our reasonable judgment to determine the Equipment's fair market value. This End of Term option may become null and void at our discretion if any Event of Default occurs or continues at any time during the original term of the Lease. Upon payment of End of Term option price, and if no default exists, we shall transfer our interest in the Equipment to you **"AS IS, WHERE IS"** without any representation or warranty whatsoever and this Lease will cancel. Provided you have given the required notice, and are not then in default you shall return the Equipment, freight and insurance prepaid, to us in good repair, condition, and working order, ordinary wear and tear excepted in a manner and to a location designated by us. Until the End of Term option price is paid or you return the Equipment as required hereunder, you will be responsible to continue to pay rent at the highest monthly rate set forth in this lease.

**16. LATE CHARGE; FEES:** If any part of any Obligation is not made by you within five (5) days of its due date, you agree to pay us fifteen percent (15%) of each such late payment (to the extent permitted by law). You agree to pay us the late charge not later than one month following the date that the Obligation was first due. You agree to reimburse us for our reasonable expenses incurred in connection with this Lease, including, but not limited to, a documentation fee based on our current fee schedule which is available to you upon your request.

**17. ENTIRE AGREEMENT; CHANGES:** This Lease contains the entire agreement between you and us, and it may not be altered, amended, modified, terminated or otherwise changed except in writing and signed by both you and us. A limiting endorsement on a check or other form of payment will not be effective to modify the Obligations or any of the other terms and conditions of this Lease, and we may apply any payment received without being bound by such limiting endorsements.

ECG.av.050217 AEF

Page 4 of 5

Lease Agreement # 081219EL1-J01

Initial 

**18. COMPLIANCE; NOTICES:** In the event you fail to comply with any terms of this Lease, we can, but we do not have to, take any action necessary to effect your compliance upon ten (10) days prior written notice to you. If we are required to pay any amount to obtain your compliance, the amount we pay plus all of our expenses in causing your compliance, shall become additional Obligations and shall be paid by you together with the next due Rent payment. If any notices are required under this Lease, they shall be sufficient if given personally or mailed to the address set forth in this Lease by certified or registered mail, postage prepaid. This Lease is for the benefit of and is binding upon you and your personal representatives, successors and assigns.

**19. CHOICE OF LAW; JURISDICTION:** This Lease and each Schedule shall be governed by the internal laws for the state in which Lessor's or Lessor's assignee's principal corporate offices are located. **IF THIS LEASE IS ASSIGNED, YOU AGREE THAT ANY DISPUTE ARISING UNDER OR RELATED TO THIS LEASE WILL BE ADJUDICATED IN THE FEDERAL OR STATE COURT WHERE THE ASSIGNEE'S CORPORATE HEADQUARTERS IS LOCATED AND WILL BE GOVERNED BY THE LAW OF THAT STATE. YOU HEREBY CONSENT TO PERSONAL JURISDICTION AND VENUE IN THAT COURT AND WAIVE ANY RIGHT TO TRANSFER VENUE.** However, you agree that we will have the right to commence any action in any Court having the proper jurisdiction for that action. You agree and consent that we may serve legal papers on you by registered or certified mail, which shall be sufficient to obtain Jurisdiction. **WE EACH WAIVE TRIAL BY JURY IN ANY ACTION BETWEEN US.**

**20. REPRESENTATIONS AND COVENANT OF LESSEE:** You represent that all financial and other information furnished to us was, at the time of delivery, true and correct. During the term of this Lease, you shall provide us with such interim or annual financial statements and filed tax returns as we request.

**21. LESSEE GUARANTY:** You agree to submit the original lease documents with the security deposit to Lessor or its assignee via overnight courier the same day of the facsimile transmission of the lease documents. Should we fail to receive these originals, you agree to be bound by the faxed copy of this agreement with appropriate signatures on the document. Lessee waives the right to challenge in court the authenticity of a faxed copy of this agreement and the faxed copy shall be considered the original and shall be the binding agreement for the purposes of any enforcement action under paragraph 12. If this document was sent electronically, you hereby warrant that this document has not been altered in any way. Any alteration or revision to

any part of this or any attached documents will make all such alterations or revisions non-binding and void.

**22. COMPUTER SOFTWARE:** Not withstanding any other terms and conditions of the Agreement, you agree that as to software only: a) We have not had, do not have, nor will have any title to such software, b) You have executed or will execute a separate software license agreement and we are not a party to and have no responsibilities whatsoever in regard to such license agreement, c) You have selected such software and as per Agreement paragraph 5, WE MAKE NO WARRANTIES OF MERCHANTABILITY, DATA ACCURACY, SYSTEM INTEGRATION OR FITNESS FOR USE AND TAKE ABSOLUTELY NO RESPONSIBILITY FOR THE FUNCTION OR DEFECTIVE NATURE OF SUCH SOFTWARE.

ECG.av.050217.AEF



Page 5 of 5

Lease Agreement # 081219EL1-J01

Initial 

[Exhibit A]

## Westrux International, Inc.

**Invoice No. 04T28**

15555 Valley View Ave.
Santa Fe Springs, California 90670
(562)404-1020 fax (562)404-9618

### INVOICE

**Customer**

| | |
|---|---|
| Name | Envision Capital Group LLC |
| Address | 23422 Mill Creek Drive   STE 200 |
| City | Laguna Hills          State CA      ZIP 92653 |
| Phone | |

| | |
|---|---|
| Date | 8/13/2019 |
| Order No. | |
| Rep | Dylan Guggenmos |
| FOB | |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| | **Ship To: Orange Courier, Inc.** | | |
| | 3731 W. Warner Ave. | | |
| | Sanat Ana, CA  92704 | | |
| | **Vin 1LH440VH1K1B27858** | | |
| 1 | 2019 Landoll Model 440-50CA Trailer | $70,686.93 | $70,686.93 |
| 1 | FET | $6,538.55 | $6,538.55 |
| 1 | CA Tire Recycling Fee | $28.00 | $28.00 |
| 1 | Freight | $2,500.00 | $2,500.00 |
| 1 | Doc Fee | $85.00 | $85.00 |
| 1 | Electronic DMV Filing Fee | $30.00 | $30.00 |
| 1 | License | $42.00 | $42.00 |
| | Lease Resale | | |

| | | |
|---|---|---|
| | SubTotal | $79,910.48 |
| | Shipping & Handling | $0.00 |
| Taxes | State | $0.00 |
| | **TOTAL** | $79,910.48 |

**Payment Details**

- ● Cash
- ○ Check
- ○ Credit Card

Name
CC #
        Expires

Office Use Only

### CUSTOMER COPY

### THANK YOU FOR CHOOSING WESTRUX FOR
### YOUR TRANSPORTATION NEEDS

Exhibit 2

**Fill in this information to identify the case:**

Debtor 1    Orange Courier, Inc.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    Central District of California

Case number    2:25-bk-20443-DS

Official Form 410

# Proof of Claim

04/25

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:    Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | ENVISION CAPITAL GROUP LLC <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| 2. **Has this claim been acquired from someone else?** | ☑ No <br> ☐ Yes.  From whom? _____ |

3. **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| ENVISION CAPITAL GROUP LLC <br> c/o Sweeney and Kelble <br> Name | ENVISION CAPITAL GROUP LLC c/o <br> Chris Jauregui <br> Name |
| 515 S. Flower St., 18th Floor <br> Number        Street | 29982 Ivy Glenn Dr Fl 1 <br> Number        Street |
| Los Angeles          CA          90071 <br> City          State          ZIP Code | Laguna Niguel          CA          92653 <br> City          State          ZIP Code |
| Contact phone   (310) 955-4050 | Contact phone   949-225-1740 |
| Contact email   kelly@ksgklaw.com | Contact email   chris@ecgllc.com |

Uniform claim identifier (if you use one):

— — — — — — — — — — — — — — — — — — — — — — — —

| | |
|---|---|
| 4. **Does this claim amend one already filed?** | ☑ No <br> ☐ Yes.  Claim number on court claims registry (if known) _____        Filed on ____ / ____ / ____ <br>                                                                                          MM  /  DD  /  YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes.  Who made the earlier filing? _____ |

**Part 2:   Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:   0   6   2   0 |

| | |
|---|---|
| 7. **How much is the claim?** | $_____44,035.22_* **Does this amount include interest or other charges?**<br><br>*Plus fair market value of equipment to be determined.<br><br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Equipment Lease on 2013 Versa-Lift forklift 60-80 ATMB80-007 |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes.   The claim is secured by a lien on property.<br><br>**Nature of property:**<br><br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**  $_____<br>**Amount of the claim that is secured:**  $_____<br><br>**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**  $_____<br><br>**Annual Interest Rate** (when case was filed)_____%<br>☐ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☐ No<br>☑ Yes. **Amount necessary to cure any default as of the date of the petition.**  $_____22,067.61<br>Due for 9/15/25 ($19,189.23  + $2,878.38 late fees) |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  01 / 20 / 2026
              MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Chris | | Jauregui |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Portfolio Manager | | |
| Company | ENVISION CAPITAL GROUP LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 29982 Ivy Glenn Dr Fl 1 | | |
| | Number    Street | | |
| | Laguna Niguel | CA | 92677 |
| | City | State | ZIP Code |
| Contact phone | (949) 225-1740 | Email | chris@ecgllc.com |

# Statement

1-Lease #081219EL1-J01 (AEF)
2019 Landoll 440-50CA Trailer
Mo. Pmt. $2,165.31 + $324.65 late fees
Dates Past due for 11/1/2025,12/12026

Past Due Total $6,462.93
Late Fees $973.93
Grand Total $7,438.86*

*Plus fair market value of equipment to be determined.

_____

2-Lease #030620EL1-C02 (Quarterly Pmts.)
2013 Versa-Lift forklift 60-80 ATMB80-007 (SN 1819)
Quarterly Pmt. $19,189.23 + $2,878.38 late fees
Dates Past due for 9/15/2025,12/1/2025

Past Due Total $38,378.46
Late Fees $5,756.76
Grand Total $44,035.22*

*Plus fair market value of equipment to be determined.

_____

3-Lease #102020EL1-C03 (AEF)
Bendi B40VAC Forklift Purch Price
Mo. Pmt. $2,165.31 + $337.92 late fees
Dates Past due for 11/1/2025, 12/1/2025, 1/1/2026

Past Due Total $6,758.49
Late Fees $1,013.77
Grand Total $7,772.26*

*Plus fair market value of equipment to be determined.



| ENVISION CAPITAL GROUP LLC (*Lessor*) | LEASE AGREEMENT |
|---|---|
| 23422 Mill Creek Drive, Suite 200<br>Laguna Hills, CA 92653<br>P 949.225.1700   F 888.779.6987<br>P 888.779.6989   F 888.779.6987 | **LEASE NUMBER**<br>**030620EL1-C02** |

| Full Legal Name and Address of Lessee | Name and Address of Equipment Supplier |
|---|---|
| **ORANGE COURIER, INC.**<br>**3731 W WARNER AVE**<br>**SANTA ANA, CA 92704-5218** | **See Exhibit "A" attached hereto and made a part hereof.** |

| Lessee Phone Number | Lessee Tax ID | Equipment Supplier Phone Number | | |
|---|---|---|---|---|
| **(949) 975-1313** | **33-0543963** | **See Exhibit "A" attached hereto and made a part hereof.** | | |

| Quarterly Rent | Base Term | Deposit: | Deposit Applied To: | Documentation Fee: | End of Term: |
|---|---|---|---|---|---|
| (Plus, applicable taxes): | in Quarters: | | **Last Quarterly** | | **Fair Market Value** |
| **$17,484.49** | **20** | **$17,484.49** | **Rentals** | **Bill for $495.00** | **Purchase Option (FMV)** |

| Location (If other than billing address of lessee) |
|---|

| Equipment Description: | **See Exhibit "A" attached hereto and made a part hereof.** |
|---|---|

Please read your copy of this Lease Agreement and any schedules attached (Lease) carefully and feel free to ask us any questions you may have about it. We have written the Lease in plain language because we want you to fully understand its terms. For purposes of this Lease, you and your shall mean the Lessee indicated above, and we, us and our refer to the Lessor, ENVISION CAPITAL GROUP LLC, its agents and employees and its successors and assigns.

**The undersigned agrees that this lease reflects the agreement of the parties, including all terms of the reverse side of this document.**

AGREED:

**ORANGE COURIER, INC.**

Legal Name

By: ☒ *Evell Tara Stanley*
 7C8461DC6F7F4DB...

**EVELL TARA STANLEY**
**PRESIDENT**

Date: **3/10/2020**

AGREED:   **ENVISION CAPITAL GROUP LLC**

Signature

By: *Jeff A Edwards*  Title
 172157706F5A4BD...

Date: **3/13/2020**   **Managing Member**

**COMPANY RESOLUTION**

I, **EVELL TARA STANLEY**, the duly elected and qualified **Secretary** of **ORANGE COURIER, INC.** (the "Company"), hereby certify that Company's exact legal name, state of incorporation/organization, location of its chief executive office and/or its place of residence, as applicable, have been correctly identified to Lessor, and that at a duly constituted meeting of the Board of Directors/Members/ Partners of the Company, the Board resolved that **EVELL TARA STANLEY**, as **PRESIDENT**, in his/her capacity as is authorized for, on behalf of and in the name of this Company, to negotiate, procure and execute such Lease Agreements and any other documents in connection with same, which in his/her opinion are necessary or advisable to effectuate the most favorable interests of the Company, and the execution of such documents by said officer shall be conclusive evidence of his/her approval thereof.

IN WITNESS WHEREOF, I have affixed my name as Secretary of the Company on ____**3/10/2020**____.

Signature

By: ☒ *Evell Tara Stanley*  Title
 7C8461DC6F7F4DB...

Name: **EVELL TARA STANLEY**   Secretary
Date: **3/10/2020**

**LEASE GUARANTY**

In consideration of Lessor entering into the above Lease in reliance on this Guaranty, the undersigned, jointly and severally, unconditionally and irrevocably guarantee to Lessor and to any assignee of Lessor, the prompt payment and performance of all of Lessee's obligations under the above Lease and all existing and future Agreements between Lessor and Lessee. The undersigned agree(s): (a) that this is a guarantee of payment and not of collection and that Lessor or its assignee may proceed directly against the undersigned without disposing of any security or seeking to collect from Lessee; (b) to waive all defenses and notices, including those of protest, presentment and demand; (c) that Lessor may extend or otherwise change the terms of the Lease without notice to the undersigned; and (d) to pay all of Lessor's costs of enforcement and collection. This guarantee survives the bankruptcy of the Lessee and binds the undersigned's administrators, successors and assigns. **IF THE ABOVE LEASE IS ASSIGNED BY LESSOR, THE UNDERSIGNED AGREE(S) THAT ANY DISPUTE ARISING UNDER OR RELATED TO THIS GUARANTY WILL BE ADJUDICATED IN THE FEDERAL OR STATE COURT WHERE THE ASSIGNEE'S CORPORATE HEAD QUARTERS IS LOCATED AND WILL BE GOVERNED BY THE LAW OF THAT STATE. THE UNDERSIGNED HEREBY CONSENT(S) TO PERSONAL JURISDICTION AND VENUE IN THAT COURT AND WAIVE(S) ANY RIGHT TO TRANSFER VENUE. EACH OF THE UNDERSIGNED WAIVES ANY RIGHT TO A TRIAL BY JURY.**

Signature

By: *Evell Tara Stanley*
 7C8461DC6F7F4DB...

Name: **EVELL TARA STANLEY**
Date: **3/10/2020**

DocuSign Envelope ID: D1ZB7B3E1-52D6-4482-BC9C-133368DB653B

Case 2:23-bk-20433-BSC Claim 22 Document 10 Filed 01/23/26 Entered 01/28/26 13:27:41 Page 3 of Main Document 10 Page 29 of 47

**1. LEASE**: You agree to lease from us and we agree to lease to you, the equipment listed above or on any schedule to this Lease (Equipment). You unconditionally promise to pay us the sum of all of the rental and other payments indicated above or on any schedule (Rent). You authorize us to insert in this lease any serial numbers and other identification data about the Equipment, as well as any other omitted factual matters. All Rent and other payments under this Lease or any other agreement with us (collectively Obligation or Obligations) are payable in U.S. dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs.

**2. TERM OF LEASE:** The term of this Lease shall become effective on the date the Equipment is accepted by Lessee ("Commencement Date") and shall continue for the number of consecutive quarters from the Commencement Date shown under Base Term (the "Initial Term"), above, unless earlier canceled or terminated as provided herein or unless extended or renewed as provided for in the Lease Agreement. Lessee agrees that the Commencement Date shall be set at the sole discretion of the Lessor on any date following delivery and acceptance of all the Equipment. The execution of a Delivery and Acceptance Certificate by Lessee shall represent that the Equipment has been unconditionally accepted by Lessee for all purposes of the Lease Agreement. The Base Term of the Lease shall begin one quarter (90 days) following the Commencement Date and terminate upon the expiration of the number of quarters stated under Base Term, above. Following the Commencement Date, Rent and other Obligation payments are due on the first day of each quarter unless otherwise specified by lessor, payable to a location to be designated in writing. In addition to rent payable for the Initial Term, Lessee agrees to pay Interim Rent with respect to the Lease Agreement from the date the Equipment is delivered and accepted, as evidenced by the execution of the Delivery and Acceptance Certificate (such date of execution, the "Delivery and Acceptance Date"), to the Initial Term Commencement Date. Interim Rent shall be calculated at a daily rate equal to 1/90th of the Rent Payment multiplied by the total number of days from the Delivery and Acceptance Date up to and including the Initial Term Commencement Date, which such Interim Rent shall be due and payable on the Delivery and Acceptance Date. YOUR OBLIGATION TO PAY RENT TO US IS UNCONDITIONAL AND NOT SUBJECT TO ANY REDUCTION, SET-OFF, DEFENSE, OR COUNTERCLAIM AND MAY NOT BE CANCELED FOR ANY REASON WHATSOEVER. In the event this Lease is not fully completed for any reason beyond our control, all deposits made by you will be retained by us as compensation for documentation, processing and other expenses. We have the right, but not the obligation, to electronically withdraw funds from your bank account to pay for any unpaid Rent, taxes, fees, charges and assessments. You will provide us with any bank account information we request in order to process electronic payments. You may revoke our authorization to electronically withdraw funds by giving us ten (10) days prior written notice.

**3. NO WARRANTIES; NO AGENCY: WE ARE LEASING THE EQUIPMENT TO YOU AS IS, WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF NON-INFRINGEMENT, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OR ORDINARY USE IN CONNECTION WITH THIS LEASE.** You understand and agree that we are independent from the vendor, manufacturer and/or supplier (Supplier) of the Equipment and that neither the Supplier nor any other person is our agent, nor are they authorized to waive or change any term or condition of this Lease. You agree that no representation, guaranty or warranty by the Supplier or other person is binding on us. So long as you are not in default under any of the terms of this Lease, we transfer to you any warranties made to us, as the owner of the Equipment, by the Supplier. You agree that any breach by the Supplier will not relieve or excuse your obligations to us. Regardless of cause, you will not assert any claim whatsoever against us for loss of profits you expected to make or any other direct, consequential, special or indirect damages. If you have entered into a maintenance agreement for the Equipment and the cost of the maintenance is included in the Rent, you acknowledge that we are not responsible for any service, repairs, or maintenance of the Equipment, and that we are not a party to the maintenance agreement. If you have a dispute regarding maintenance or service, then you will nevertheless continue to pay all Obligations as they become due.

**4. UCC-ARTICLE-2A:** You agree that this Lease is a "Finance Lease" under Article 2A of the Uniform Commercial Code as adopted by the State of California (UCC). You acknowledge that: (a) we did not select manufacture or supply the Equipment but at your request we have purchased the Equipment for lease to you; and (b) based solely on your own judgment, you have selected the Supplier and the Equipment that you are leasing from us. You agree that you have approved any purchase or supply contract between us and the Supplier before signing this Lease; or, if you have entered into a purchase contract for the Equipment, you agree to assign it to us effective when we pay for the Equipment. You may have rights under the supply or purchase contract, and you may contact the Supplier for a description of those rights or any warranties. To the extent permitted by applicable law, **YOU WAIVE ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON YOU UNDER UCC §§ 2A-303 AND 2A-508 THROUGH 2A-522, INCLUDING WITHOUT LIMITATION, THE RIGHT TO: (i) REPUDIATE THE LEASE AND REJECT THE EQUIPMENT; (ii) REVOKE ACCEPTANCE OF THE LEASE; OR (iii) RECOVER DAMAGES FROM US FOR ANY BREACH OF WARRANTY.**

**5. DELIVERY OF EQUIPMENT:** You agree to accept the Equipment when it is delivered and to sign the Equipment Acceptance supplied by us. We may at our discretion confirm by telephone that you have accepted the Equipment and this telephone verification of your acceptance of the Equipment shall have the same effect as a signed Equipment Acceptance.

**6. ASSIGNMENT:** You may not sell, transfer, assign or sublease the Equipment without our prior written approval. We may sell, assign or transfer this Lease, or any part of it, and/or ownership of the Equipment without notifying you; and you agree that if we do, the new Lessor will have the same rights and benefits that we now have, and will not have to perform any of our obligations. You agree that the rights of the new Lessor will not be subject to any claims, defenses or setoffs that you may have against us. However, any such assignment sale, or transfer of this Lease or the Equipment will not relieve us of our obligations to you under this Lease.

**7. OWNERSHIP, RIGHTS, AND QUIET ENJOYMENT:** You agree that we are the owner of and have title to the Equipment. You agree, at your expense, to protect and defend our title and other rights to the Equipment. Further, you agree that you will at all times keep the Equipment free from all legal process and liens and you shall give us immediate notice if any legal process or lien is asserted or made against you or the Equipment. You shall have the right to quiet use and enjoyment of the Equipment for the term of this Lease, provided you are not in default. We also have the right, at reasonable times, to inspect the equipment at your expense.





Lease Agreement #                                    030620EL1-C02

Page 2 of 4                            Initial

**8. CARE, USE AND LOCATION; LOSS OF EQUIPMENT:** You are responsible for installing and keeping the Equipment in good working order and repair. You will keep and use the Equipment only at your address shown on this Lease, only for business or commercial purposes and in compliance with all applicable laws, ordinances or regulations. You will not make any alterations to the Equipment without our prior written consent, nor will you permanently attach the Equipment to any real estate. You are responsible for protecting the Equipment from damage, and from any other kind of loss while you have the Equipment or while it is being delivered to you. In the event the Equipment is lost, stolen or damaged, so long as you are not in default under this Lease, then you shall have the option within one week of such event to: (a) repair or replace the Equipment or (b) pay to us the unpaid balance of the remaining Rent under this Lease and our residual interest in the Equipment, discounted to present value at the rate of four percent (4%) plus any other Obligations.

**9. TAXES AND FEES:** You agree to pay when due all taxes, fees, fines, assessments and penalties relating to this Lease, including, without limitation, documentation fees, filing fees, credit fees, equipment inspection fees, early termination or assumption fees, title fees, name change fees, sales or property taxes, use taxes and business taxes. You also agree that we may estimate the yearly personal property taxes that will be due for the Equipment, and you agree to pay us the estimated taxes together with a processing fee as invoiced by us. If we pay any taxes, fines or penalties for you, you agree to reimburse us, together with a processing fee, on demand.

**10. INDEMNITY:** We are not responsible for any injuries or losses to you or any other person or property caused by the installation, operation, maintenance or use of the Equipment. You agree to reimburse us for and defend us against any claims for such losses or injuries, including, without limitation, those arising out of the negligence, tort or strict liability claims. This indemnity shall continue even after the term of this lease has expired.

**11. COLLATERAL PROTECTION AND INSURANCE:** You agree to keep the equipment fully insured against loss with us as loss payee in an amount not less than the replacement cost until this Agreement is terminated. You also agree to obtain a general public liability insurance policy from anyone who is acceptable to us and to include us as an insured on the policy. You agree to provide us certificates or other evidence of insurance acceptable to us before this Agreement begins. If you fail to provide proof of such insurance we may, but are not obligated to, acquire insurance on your behalf for which you agree to pay the insurance premium as well as an administrative fee which may provide a profit to us. NOTHING IN THIS PARAGRAPH WILL RELIEVE YOU OF YOUR RESPONSIBILITY FOR LIABILITY INSURANCE COVERAGE ON THIS EQUIPMENT.

**12. DEFAULT AND REMEDIES:** If you: (A) do not pay any Obligation when due; (B) break any of your promises, representations or covenants under this Lease or under any other agreement with us; (C) become insolvent assign your assets for the benefit of your creditors; (D) or any guarantor enters (voluntarily or involuntarily) into a bankruptcy proceeding; (E) default on any obligations to any of your other creditors; (F) have made any representations to us with respect to any information provided in connection with this Lease or any other agreement with us that is not truthful at the time it is made or have omitted any material information with respect to your assets or liabilities, or any other information that would be considered material in the extension of credit;

(G) are a corporation and more than 20% of the issued and outstanding voting capital stock is transferred to or acquired by any person or entity that is not an owner as of the date of this Lease; (H) any guarantor dies; or (I) you change your name, state of incorporation, chief executive office and/or place of residence without providing us with 30 days prior written notice of such change, you will be in default. In the event of a default by you, we can require that you return the Equipment to us and pay to us the remaining balance of all of the Rent due under this Lease, discounted to present value at six percent (6%), together with any other amounts due under this Lease. We can also require that you pay to us our residual interest in the Equipment. Interest shall accrue on all on all Obligations due us from the date of default until paid at the rate of eighteen percent (18%) per annum, but only to the extent permitted by law. We shall also be entitled to recover from you all damages caused by that default, including any of our income tax benefits. We can also use any of the remedies available to us under the UCC or any other law, including repossession of the Equipment or other Collateral. You agree to reimburse us for all charges, costs, expenses and attorneys' fees that we have to pay to enforce this Lease or collect the Obligations under this Lease and in any lawsuit or other legal proceeding which we are required to bring or defend because of your default. You also agree that In the event of a dispute related to or arising out of this Lease, the Lessor in such dispute shall be entitled to recover its reasonable attorney's fees and costs. If we have to take possession of the Equipment, you agree to pay the cost of repossession, storing, shipping, repairing and selling the Equipment You agree that we do not have to notify you that we are selling the Equipment. You also agree that we are entitled to abandon the Equipment if we reasonably believe it to be in our best interests.

**13. OTHER RIGHTS:** Time is of the essence in this Lease. You agree that any delay or failure by us to enforce our rights under this lease or any other agreements shall not prevent us from enforcing any rights at a later time. Both parties intend this Lease to be a valid and legal document, and agree that If any part Is determined to be unenforceable, all other parts will remain in full force and effect. If, contrary to the parties' intention, this Lease is held to create a security interest in any item, Rent for such item shall be reduced so that any interest portion is the highest rate permitted by applicable law. All interest due hereunder shall be reduced if required to equal the highest rate permitted by applicable law, provided, Lessee waives to the extent permitted by law, the right to seek such reduction. You also grant us a security interest in the Equipment and any proceeds of, accessions and attachments to the Equipment as security for your Obligations. You agree that we may obtain information from credit reporting agencies at any time. You agree that, at your expense, we may file financing statements or other related filings in our name or in the name of any agent designated by us in a separate agreement entered into by us without your consent or notice to you. You hereby authorize us, or our assigns, to file a financing statement without your signature, in form and content and from time to time as we deem proper, listing you as Lessee or Debtor. You appoint us or our designee as your attorney-in-fact to execute and file, on your behalf, financing statements covering the equipment or any other collateral. Any notice required by this Lease or the UCC shall be deemed to be delivered when a record properly directed to the intended recipient has been (a) deposited with the US Postal Service, (b) transmitted by facsimile, (c) transmitted through the Internet or (d) has been personally delivered.





**Lease Agreement #**

**030620EL1-C02**

**Initial**

**14. LESSEE REPRESENTATIONS AND WARRANTIES:** You hereby represent and warrant that at the time you sign this Lease you are and shall remain a business entity duly organized, validly existing, and in good standing under the laws of the state of your organization, duly qualified to conduct business in every jurisdiction where you conduct business and are not subject to any bankruptcy proceeding and that your exact legal name, state of incorporation, location of your chief executive office and/or your place of residence as applicable, have been correctly identified to us. You further represent and warrant that at the time you sign this Lease the person executing this Lease or any related document on behalf of you or any related guarantor shall be authorized to take such action and bind you and the guarantor to the Lease, and that the execution, delivery and performance of this Lease is duly authorized by your organizational documents and, if necessary, resolutions of your directors and/or shareholders, partners, or managers and/or members. By providing a telephone number for a cellular phone or other wireless device, you are expressly consenting to receiving communications (for NON- marketing or solicitation purposes) at that number, including, but not limited to, prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system from Lessor and/or its assigns including affiliates and agents. This Express Consent applies to each such telephone number that you provide to us now or in the future and permits such calls. These calls and messages may incur access fees from your cellular provider.

**15. RETURN OF EQUIPMENT; RENEWAL:** If no default exists or has occurred under this Lease, you may, at the end of the original or any renewal term, purchase all (but not less than all) of the Equipment for a sum set forth on the front of this Lease, plus any applicable taxes. Unless the End of Term option price is **$101** or less, then at least **120** days prior to the end of the original term you must give us written notice via certified mail that you will purchase the Equipment or that you will return the Equipment to us. If you do not give us such written notice or if you do not purchase or deliver the equipment in accordance with the terms and conditions of this Lease, then this Lease shall automatically renew for a 2 quarter term, and thereafter renew for successive 1 quarter terms until you deliver the Equipment to us. During such renewal(s), the Rent shall be the highest quarterly rate set forth in this Lease. We may cancel the renewal by sending you written notice **90** days prior to such renewal term. If the Fair Market Value Purchase Option has been selected, we will use our reasonable judgment to determine the Equipment's fair market value. This End of Term option may become null and void at our discretion if any Event of Default occurs or continues at any time during the original term of the Lease. Upon payment of End of Term option price, and if no default exists, we shall transfer our interest in the Equipment to you **"AS IS, WHERE IS"** without any representation or warranty whatsoever and this Lease will terminate. Provided you have given the required notice, and are not then in default you shall return the Equipment, freight and insurance prepaid, to us in good repair, condition, and working order, ordinary wear and tear excepted in a manner and to a location designated by us. Until the End of Term Option price is actually paid, you will be responsible to continue to pay rent at the highest quarterly rate set forth in this lease.

**16. LATE CHARGE; FEES:** If any part of any Obligation is not made by you within five (5) days of its due date, you agree to pay us fifteen percent (15%) of each such late payment (to the extent permitted by law). You agree to pay us the late charge not later than one month following the date that the Obligation was first due. You agree to reimburse us for our reasonable expenses incurred in connection with this Lease, including, but not limited to, a documentation fee based on

our current fee schedule which Is available to you upon your request.

**17. ENTIRE AGREEMENT; CHANGES:** This Lease contains the entire agreement between you and us, and It may not be altered, amended, modified, terminated or otherwise changed except in writing and signed by both you and us. A limiting endorsement on a check or other form of payment will not be effective to modify the Obligations or any of the other terms and conditions of this Lease, and we may apply any payment received without being bound by such limiting endorsements.

**18. COMPLIANCE; NOTICES:** In the event you fail to comply with any terms of this Lease, we can, but we do not have to, take any action necessary to affect your compliance upon ten (10) days prior written notice to you. If we are required to pay any amount to obtain your compliance, the amount we pay plus all of our expenses in causing your compliance, shall become additional Obligations and shall be paid by you together with the next due Rent payment. If any notices are required under this Lease, they shall be sufficient if given personally or mailed to the address set forth in this Lease by certified or registered mail, postage prepaid. This Lease is for the benefit of and is binding upon you and your personal representatives, successors and assigns.

**19. CHOICE OF LAW; JURISDICTION:** This Lease and each Schedule shall be governed by the internal laws for the state in which Lessor's or Lessor's assignee's principal corporate offices are located. **IF THIS LEASE IS ASSIGNED, YOU AGREE THAT ANY DISPUTE ARISING UNDER OR RELATED TO THIS LEASE WILL BE ADJUDICATED IN THE FEDERAL OR STATE COURT WHERE THE ASSIGNEE'S CORPORATE HEADQUARTERS IS LOCATED AND WILL BE GOVERNED BY THE LAW OF THAT STATE. YOU HEREBY CONSENT TO PERSONAL JURISDICTION AND VENUE IN THAT COURT AND WAIVE ANY RIGHT TO TRANSFER VENUE.** However, you agree that we will have the right to commence any action In any Court having the proper jurisdiction for that action. You agree and consent that we may serve legal papers on you by registered or certified mail, which shall be sufficient to obtain Jurisdiction. **WE SHALL WAIVE TRIAL BY JURY IN ANY ACTION BETWEEN US.**

**20. REPRESENTATIONS AND COVENANT OF LESSEE:** You represent that all financial and other information furnished to us was, at the time of delivery, true and correct. During the term of this Lease, you shall provide us with such interim or annual financial statements and filed tax returns as we request.

**21. LESSEE GUARANTY:** You agree to submit the original master lease documents with the security deposit to Lessor or its assignee via overnight courier the same day of the facsimile transmission of the lease documents. Should we fail to receive these originals, you agree to be bound by the faxed copy of this agreement with appropriate signatures on the document. Lessee waives the right to challenge in court the authenticity of a faxed copy of this agreement and the faxed copy shall be considered the original and shall be the binding agreement for the purposes of any enforcement action under paragraph 12. If this document was sent electronically, you hereby warrant that this document has not been altered in any way. Any alteration or revision to any part of this or any attached documents will make all such alterations or revisions non-binding and void.

**22. COMPUTER SOFTWARE:** Not withstanding any other terms and conditions of the Agreement, you agree that as to software only: a) We have not had, do not have, nor will have any title to such software, b) You have executed or will execute a separate software license agreement and we are not a party to and have no responsibilities whatsoever in regard to such license agreement, c) You have selected such software and as per Agreement paragraph 5, WE MAKE NO WARRANTIES OF MERCHANTABILITY, DATA ACCURACY, SYSTEM INTEGRATION OR FITNESS FOR USE AND TAKE ABSOLUTELY NO RESPONSIBILITY FOR THE FUNCTION OR DEFECTIVE NATURE OF SUCH SOFTWARE.





Lease Agreement #     030620EL1-C02



23422 MILL CREEK DRIVE, SUITE 200, LAGUNA HILLS, CA 92653
TOLL FREE 888.779.6989 | PHONE 949.225.1700 | FAX 949.225.1701

## EXHIBIT 'A' (EQUIPMENT DESCRIPTION)
### Lease Agreement # 030620EL1-C02

The following invoice(s) are referenced, and hereby incorporated, for the purpose of describing the equipment subject to Lease Agreement # 030620EL1-C02. By signing below, I, the lessee, acknowledge that I choose to lease the equipment listed on the invoice(s) per the payment schedule and the terms and conditions set out in Lease Agreement # 030620EL1-C02 which is the governing document to this lease regardless of the price and terms (if any) indicated on the invoice(s).

### *See invoices attached hereto as "EXHIBIT A1" and incorporated herein by this reference.*

| INVOICE # | DATE | VENDOR |
|---|---|---|
| **4351** | **02/20/2020** | **GLADDEN EQUIPMENT ERECTORS, INC.** |

*Subject to credit approval, delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature.*

Lessee:
**ORANGE COURIER, INC.**

By:
Name:     **EVELL TARA STANLEY**
Title:       **PRESIDENT**
Date:       **3/10/2020**

[EXHIBIT 11]

**Gladden Equipment Erectors, Inc.**

2291 N. MacArthur Drive
Tracy, CA 95376
Phone (209) 839-1478
Email: admin@gladdenee.com

# Invoice

| Date | Invoice # |
|------|-----------|
| 2/20/2020 | 4351 |

| Bill To | Ship To |
|---------|---------|
| ORANGE COURIER, INC.<br>3731 W. WARNER AVE.<br>SANTA ANA, CA 92704 | ORANGE COURIER, INC.<br>3731 W. WARNER AVE.<br>SANTA ANA, CA 92704 |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
| | Due on receipt | Paul | 2/20/2020 | | | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 1 | Fixed Asset Purchase | FIXED ASSET PURCHASE<br>2013 VERSA-LIFT 60/80<br>ATMB80-007<br>SERIAL NUMBER 1819 | 270,000.00 | 270,000.00 |
| | | Sales Tax | 9.25% | 0.00 |

| | **Total** | $270,000.00 |
|---|---|---|

Exhibit 3

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Orange Courier, Inc. |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:25-bk-20443-DS |

## Official Form 410

# Proof of Claim

04/25

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

ENVISION CAPITAL GROUP LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

ENVISION CAPITAL GROUP LLC
c/o Sweeney and Kelble
Name

515 S. Flower St., 18th Floor
Number          Street

Los Angeles          CA          90071
City          State          ZIP Code

Contact phone     (310) 955-4050

Contact email     kelly@ksgklaw.com

**Where should payments to the creditor be sent?** (if different)

ENVISION CAPITAL GROUP LLC c/o
Chris Jauregui
Name

29982 Ivy Glenn Dr Fl 1
Number          Street

Laguna Niguel          CA          92653
City          State          ZIP Code

Contact phone     949-225-1740

Contact email     chris@ecgllc.com

Uniform claim identifier (if you use one):

__ __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____
                                                                                                    MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __2__ __0__ __2__ __0__

**7. How much is the claim?** $_____7,772.26.__ **Does this amount include interest or other charges?**

*Plus fair market value of equipment to be determined.

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Equipment Lease on Bendi B40VAC Forklift

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____

Amount of the claim that is secured: $_____

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☐ No

☑ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____2,500.23__

Due for 11/01/2025 ($2,165.31 + $337.92 late fees)

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Official Form 410 **Proof of Claim** page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ **No** | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ **Yes.** *Check one:* | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  01 / 10 / 2020
                  MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Chris Jauregui | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Portfolio Manager | | |
| Company | ENVISION CAPITAL GROUP LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 29982 Ivy Glenn Dr Fl 1 | | |
| | Number       Street | | |
| | Laguna Niguel | CA | 92677 |
| | City | State | ZIP Code |
| Contact phone | (949) 225-1740 | Email | chris@ecgllc.com |

# Statement

1-Lease #081219EL1-J01 (AEF)
2019 Landoll 440-50CA Trailer
Mo. Pmt. $2,165.31 + $324.65 late fees
Dates Past due for 11/1/2025,12/12026

Past Due Total $6,462.93
Late Fees $973.93
Grand Total $7,438.86*

*Plus fair market value of equipment to be determined.

_____

2-Lease #030620EL1-C02 (Quarterly Pmts.)
2013 Versa-Lift forklift 60-80 ATMB80-007 (SN 1819)
Quarterly Pmt. $19,189.23 + $2,878.38 late fees
Dates Past due for 9/15/2025,12/1/2025

Past Due Total $38,378.46
Late Fees $5,756.76
Grand Total $44,035.22*

*Plus fair market value of equipment to be determined.

_____

3-Lease #102020EL1-C03 (AEF)
Bendi B40VAC Forklift Purch Price
Mo. Pmt. $2,165.31 + $337.92 late fees
Dates Past due for 11/1/2025, 12/1/2025, 1/1/2026

Past Due Total $6,758.49
Late Fees $1,013.77
Grand Total $7,772.26*

*Plus fair market value of equipment to be determined.



| | **ENVISION CAPITAL GROUP LLC** (*Lessor*) 23422 Mill Creek Drive, Suite 200 Laguna Hills, CA 92653 P 949.225.1700  F 888.779.6987 P 888.779.6989  F 888.779.6987 | **LEASE AGREEMENT** |
|---|---|---|
| | | **LEASE NUMBER** **102020EL1-C03** |

| *Full Legal Name and Address of Lessee* **ORANGE COURIER, INC.** **3731 W WARNER AVE** **SANTA ANA, CA 92704-5218** | *Name and Address of Equipment Supplier* **See Exhibit "A" attached hereto and made a part hereof.** |
|---|---|

| *Lessee Phone Number* **(949) 975-1313** | *Lessee Tax ID* **33-0543963** | *Equipment Supplier Phone Number* **See Exhibit "A" attached hereto and made a part hereof.** | | |
|---|---|---|---|---|

| *Monthly Rent* *(Plus, applicable taxes):* **$2,052.69** | *Base Term* *in Months:* **60** | *Deposit:* **$4,105.38** | *Deposit Applied To:* **First & Last** **Monthly Rentals** | *Documentation Fee:* **Bill for $795.00** | *End of Term:* **Fair Market Value** **Purchase Option (FMV)** |
|---|---|---|---|---|---|

*Location (If other than billing address of lessee)*

*Equipment Description:*    **See Exhibit "A" attached hereto and made a part hereof.**

Please read your copy of this Lease Agreement and any schedules attached (Lease) carefully and feel free to ask us any questions you may have about it. We have written the Lease in plain language because we want you to fully understand its terms. For purposes of this Lease, you and your shall mean the Lessee indicated above, and we, us and our refer to the Lessor, ENVISION CAPITAL GROUP LLC, its agents and employees and its successors and assigns.

| **The undersigned agrees that this lease reflects the agreement of the parties, including all terms of the reverse side of this document.** | **COMPANY RESOLUTION** |
|---|---|
| **AGREED:** **ORANGE COURIER, INC.** Legal Name | I, , the duly elected and qualified **Secretary** of **ORANGE COURIER, INC.** (the "Company"), hereby certify that Company's exact legal name, state of incorporation/organization, location of its chief executive office and/or its place of residence, as applicable, have been correctly identified to Lessor, and that at a duly constituted meeting of the Board of Directors/Members/ Partners of the Company, the Board resolved that **EVELL TARA STANLEY,** as **PRESIDENT,** in his/her capacity as is authorized for, on behalf of and in the name of this Company, to negotiate, procure and execute such Lease Agreements and any other documents in connection with same, which in his/her opinion are necessary or advisable to effectuate the most favorable interests of the Company, and the execution of such documents by said officer shall be conclusive evidence of his/her approval thereof. |

By: *Evell Tara Stanley* — DocuSigned by: 7C8461DC6F7F4DB...
**EVELL TARA STANLEY** **PRESIDENT**

Date: **10/26/2020**

IN WITNESS WHEREOF, I have affixed my name as Secretary of the Company on **10/26/2020** .

| **AGREED:**    **ENVISION CAPITAL GROUP LLC** Signature By: *Jeff A Edwards* — DocuSigned by: 17157705E54ABO... Date: **11/13/2020**    **Managing Member** Title | Signature By: *Evell Tara Stanley* — DocuSigned by: 7C8461DC6F7F4DB... Title Name: **EVELL TARA STANLEY** **Secretary** Date: **10/26/2020** |
|---|---|

### LEASE GUARANTY

In consideration of Lessor entering into the above Lease in reliance on this Guaranty, the undersigned, jointly and severally, unconditionally and irrevocably guarantee to Lessor and to any assignee of Lessor, the prompt payment and performance of all of Lessee's obligations under the above Lease and all existing and future Agreements between Lessor and Lessee. The undersigned agree(s): (a) that this is a guarantee of payment and not of collection and that Lessor or its assignee may proceed directly against the undersigned without disposing of any security or seeking to collect from Lessee; (b) to waive all defenses and notices, including those of protest, presentment and demand; (c) that Lessor may extend or otherwise change the terms of the Lease without notice to the undersigned; and (d) to pay all of Lessor's costs of enforcement and collection. This guarantee survives the bankruptcy of the Lessee and binds the undersigned's administrators, successors and assigns. **IF THE ABOVE LEASE IS ASSIGNED BY LESSOR, THE UNDERSIGNED AGREE(S) THAT ANY DISPUTE ARISING UNDER OR RELATED TO THIS GUARANTY WILL BE ADJUDICATED IN THE FEDERAL OR STATE COURT WHERE THE ASSIGNEE'S CORPORATE HEAD QUARTERS IS LOCATED AND WILL BE GOVERNED BY THE LAW OF THAT STATE. THE UNDERSIGNED HEREBY CONSENT(S) TO PERSONAL JURISDICTION AND VENUE IN THAT COURT AND WAIVE(S) ANY RIGHT TO TRANSFER VENUE. EACH OF THE UNDERSIGNED WAIVES ANY RIGHT TO A TRIAL BY JURY.**
Signature

By: *Evell Tara Stanley* — DocuSigned by: 7C8461DC6F7F4DB...
Name: **EVELL TARA STANLEY**
Date: **10/26/2020**

**1. LEASE**: You agree to lease from us, and we agree to lease to you, the equipment listed above or on any schedule to this Lease (Equipment). You unconditionally promise to pay us the sum of all the rental and other payments indicated above or on any schedule (Rent). You authorize us to insert in this lease any serial numbers and other identification data about the Equipment, as well as any other omitted factual matters. All Rent and other payments under this Lease or any other agreement with us (collectively Obligation or Obligations) are payable in U.S. dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs.

**2. TERM OF LEASE**: This Lease shall become effective upon acceptance by us by signing and dating this Lease. **A prorata portion of the aggregated average of the Rent based on a daily charge of one-thirtieth (1/30) of the Rent from the date the Equipment has been delivered and is usable by you ("Commencement Date") to the end of the month shall be payable at the Commencement Date.** The Base Term of this Lease shall begin on the first day of the month following the Commencement Date and terminate upon the expiration of the number of months stated under Base Term, above. Following the Commencement Date, Rent and other Obligation payments are due on the first of each month, payable to a location to be designated in writing. **YOUR OBLIGATION TO PAY RENT TO US IS UNCONDITIONAL AND NOT SUBJECT TO ANY REDUCTION, SET-OFF, DEFENSE, OR COUNTERCLAIM AND MAY NOT BE CANCELED FOR ANY REASON WHATSOEVER.** In the event this Lease is not fully completed for any reason beyond our control, all deposits made by you will be retained by us as compensation for documentation, processing and other expenses. We have the right, but not the obligation, to electronically withdraw funds from your bank account to pay for any unpaid Rent, taxes, fees, charges and assessments. You will provide us with any bank account information we request in order to process electronic payments. You may revoke our authorization to electronically withdraw funds by giving us ten (10) days prior written notice.

**3. NO WARRANTIES; NO AGENCY: WE ARE LEASING THE EQUIPMENT TO YOU AS IS, WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF NON-INFRINGEMENT, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OR ORDINARY USE IN CONNECTION WITH THIS LEASE.** You understand and agree that we are independent from the vendor, manufacturer and/or supplier (Supplier) of the Equipment and that neither the Supplier nor any other person is our agent, nor are they authorized to waive or change any term or condition of this Lease. You agree that no representation, guaranty or warranty by the Supplier or other person is binding on us. So long as you are not in default under any of the terms of this Lease, we transfer to you any warranties made to us, as the owner of the Equipment, by the Supplier. You agree that any breach by the Supplier will not relieve or excuse your obligations to us. Regardless of cause, you will not assert any claim whatsoever against us for loss of profits you expected to make or any other direct, consequential, special or indirect damages. If you have entered into a maintenance agreement for the Equipment and the cost of the maintenance is included in the Rent, you acknowledge that we are not responsible for any service, repairs, or maintenance of the Equipment, and that we are not a party to the maintenance agreement. If you have a dispute regarding maintenance or service, then you will nevertheless continue to pay all Obligations as they become due.

**4. UCC-ARTICLE-2A:** You agree that this Lease is a "Finance Lease" under Article 2A of the Uniform Commercial Code as adopted by the State of California (UCC). You acknowledge that: (a) we did not select manufacture or supply the Equipment but at your request we have purchased the Equipment for lease to you; and (b) based solely on your own judgment, you have selected the Supplier and the Equipment that you are leasing from us. You agree that you have approved any purchase or supply contract between us and the Supplier before signing this Lease; or, if you have entered into a purchase contract for the Equipment, you agree to assign it to us effective when we pay for the Equipment. You may have rights under the supply or purchase contract, and you may contact the Supplier for a description of those rights or any warranties. To the extent permitted by applicable law, **YOU WAIVE ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON YOU UNDER UCC §§ 2A-303 AND 2A-508 THROUGH 2A-522, INCLUDING WITHOUT LIMITATION, THE RIGHT TO: (i) REPUDIATE THE LEASE AND REJECT THE EQUIPMENT; (ii) REVOKE ACCEPTANCE OF THE LEASE; OR (iii) RECOVER DAMAGES FROM US FOR ANY BREACH OF WARRANTY.**

**5. DELIVERY OF EQUIPMENT:** You agree to accept the Equipment when it is delivered and to sign the Equipment Acceptance supplied by us. We may at our discretion confirm by telephone that you have accepted the Equipment and this telephone verification of your acceptance of the Equipment shall have the same effect as a signed Equipment Acceptance.

**6. ASSIGNMENT:** You may not sell, transfer, assign or sublease the Equipment without our prior written approval. We may sell, assign or transfer this Lease, or any part of it, and/or ownership of the Equipment without notifying you; and you agree that if we do, the new Lessor will have the same rights and benefits that we now have, and will not have to perform any of our obligations. You agree that the rights of the new Lessor will not be subject to any claims, defenses or setoffs that you may have against us. However, any such assignment sale, or transfer of this Lease or the Equipment will not relieve us of our obligations to you under this Lease.

**7. OWNERSHIP, RIGHTS, AND QUIET ENJOYMENT:** You agree that we are the owner of and have title to the Equipment. You agree, at your expense, to protect and defend our title and other rights to the Equipment. Further, you agree that you will at all times keep the Equipment free from all legal process and liens and you shall give us immediate notice if any legal process or lien is asserted or made against you or the Equipment. You shall have the right to quiet use and enjoyment of the Equipment for the term of this Lease, provided you are not in default. We also have the right, at reasonable times, to inspect the equipment at your expense.

**8. CARE, USE AND LOCATION; LOSS OF EQUIPMENT:** You are responsible for installing and keeping the Equipment in good working order and repair. You will keep and use the Equipment only at your address shown on this Lease, only for business or commercial purposes and in compliance with all applicable laws, ordinances or regulations. You will not make any alterations to the Equipment without our prior written consent, nor will you permanently attach the Equipment to any real estate. You are responsible for protecting the Equipment from damage, and from any other kind of loss while you have the Equipment or while it is being delivered to you. In the event the Equipment is lost, stolen or damaged, so long as you are not in default under this Lease, then you shall have the option within one week of such event to: (a) repair or replace the Equipment or (b) pay to us the unpaid balance of the remaining Rent under this Lease and our residual interest in the Equipment, discounted to present value at the rate of four percent (4%) plus any other Obligations.

Lease Agreement #                                          102020EL1-C03





Page 2 of 4                              Initial

**9. TAXES AND FEES:** You agree to pay when due all taxes, fees, fines, assessments and penalties relating to this Lease, including, without limitation, documentation fees, filing fees, credit fees, equipment inspection fees, early termination or assumption fees, title fees, name change fees, sales or property taxes, use taxes and business taxes. You also agree that we may estimate the yearly personal property taxes that will be due for the Equipment, and you agree to pay us the estimated taxes together with a processing fee as invoiced by us. If we pay any taxes, fines or penalties for you, you agree to reimburse us, together with a processing fee, on demand.

**10. INDEMNITY:** We are not responsible for any injuries or losses to you or any other person or property caused by the installation, operation, maintenance or use of the Equipment. You agree to reimburse us for and defend us against any claims for such losses or injuries, including, without limitation, those arising out of the negligence, tort or strict liability claims. This indemnity shall continue even after the term of this lease has expired.

**11. COLLATERAL PROTECTION AND INSURANCE:** You agree to keep the equipment fully insured against loss with us as loss payee in an amount not less than the replacement cost until this Agreement is terminated. You also agree to obtain a general public liability insurance policy from anyone who is acceptable to us and to include us as an insured on the policy. You agree to provide us certificates or other evidence of insurance acceptable to us before this Agreement begins. If you fail to provide proof of such insurance we may, but are not obligated to, acquire insurance on your behalf for which you agree to pay the insurance premium as well as an administrative fee which may provide a profit to us. NOTHING IN THIS PARAGRAPH WILL RELIEVE YOU OF YOUR RESPONSIBILITY FOR LIABILITY INSURANCE COVERAGE ON THIS EQUIPMENT.

**12. DEFAULT AND REMEDIES:** If you: (A) do not pay any Obligation when due; (B) break any of your promises, representations or covenants under this Lease or under any other agreement with us; (C) become insolvent assign your assets for the benefit of your creditors; (D) or any guarantor enters (voluntarily or involuntarily) into a bankruptcy proceeding; (E) default on any obligations to any of your other creditors; (F) have made any representations to us with respect to any information provided in connection with this Lease or any other agreement with us that is not truthful at the time it is made or have omitted any material information with respect to your assets or liabilities, or any other information that would be considered material in the extension of credit; (G) are a corporation and more than 20% of the issued and outstanding voting capital stock is transferred to or acquired by any person or entity that is not an owner as of the date of this Lease; (H) any guarantor dies; or (I) you change your name, state of incorporation, chief executive office and/or place of residence without providing us with 30 days prior written notice of such change, you will be in default. In the event of a default by you, we can require that you return the Equipment to us and pay to us the remaining balance of all of the Rent due under this Lease, discounted to present value at six percent (6%), together with any other amounts due under this Lease. We can also require that you pay to us our residual interest in the Equipment. Interest shall accrue on all on all Obligations due us from the date of default until paid at the rate of eighteen percent (18%) per annum, but only to the extent permitted by law. We shall also be entitled to recover from you all damages caused by that default, including any of our income tax benefits. We can also use any of the remedies available to us under the UCC or any other law, including repossession of the Equipment or other Collateral. You agree to reimburse us for all charges, costs, expenses and attorneys' fees that we have to pay to enforce this Lease or collect the Obligations under this Lease and in any lawsuit or other legal proceeding which we are required to bring or defend because of your default. You also agree that in the event of a dispute related to or arising out of this Lease, the Lessor in such dispute shall be entitled to recover its reasonable attorney's fees and costs. If we have to take possession of the Equipment, you agree to pay the cost of repossession, storing, shipping, repairing and selling the Equipment You agree that we do not have to notify you that we are selling the Equipment. You also agree that we are entitled to abandon the Equipment if we reasonably believe it to be in our best interests.

**13. OTHER RIGHTS:** Time is of the essence in this Lease. You agree that any delay or failure by us to enforce our rights under this lease or any other agreements shall not prevent us from enforcing any rights at a later time. Both parties intend this Lease to be a valid and legal document and agree that If any part Is determined to be unenforceable, all other parts will remain in full force and effect. If, contrary to the parties' intention, this Lease is held to create a security interest in any item, Rent for such item shall be reduced so that any interest portion is the highest rate permitted by applicable law. All interest due hereunder shall be reduced if required to equal the highest rate permitted by applicable law, provided, Lessee waives to the extent permitted by law, the right to seek such reduction. You also grant us a security interest in the Equipment and any proceeds of, accessions and attachments to the Equipment as security for your Obligations. You agree that we may obtain information from credit reporting agencies at any time. You agree that, at your expense, we may file financing statements or other related filings in our name or in the name of any agent designated by us in a separate agreement entered into by us without your consent or notice to you. You hereby authorize us, or our assigns, to file a financing statement without your signature, in form and content and from time to time as we deem proper, listing you as Lessee or Debtor. You appoint us or our designee as your attorney-in-fact to execute and file, on your behalf, financing statements covering the equipment or any other collateral. Any notice required by this Lease or the UCC shall be deemed to be delivered when a record properly directed to the intended recipient has been (a) deposited with the US Postal Service, (b) transmitted by facsimile, (c) transmitted through the Internet or (d) has been personally delivered.

**14. LESSEE REPRESENTATIONS AND WARRANTIES:** You hereby represent and warrant that at the time you sign this Lease you are and shall remain a business entity duly organized, validly existing, and in good standing under the laws of the state of your organization, duly qualified to conduct business in every jurisdiction where you conduct business and are not subject to any bankruptcy proceeding and that your exact legal name, state of incorporation, location of your chief executive office and/or your place of residence as applicable, have been correctly identified to us. You further represent and warrant that at the time you sign this Lease the person executing this Lease or any related document on behalf of you or any related guarantor shall be authorized to take such action and bind you and the guarantor to the Lease, and that the execution, delivery and performance of this Lease is duly authorized by your organizational documents and, if necessary, resolutions of your directors and/or shareholders, partners, or managers and/or members. By providing a telephone number for a cellular phone or other wireless device, you are expressly consenting to receiving communications (for NON- marketing or solicitation purposes) at that number, including, but not limited to, prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system from Lessor and/or its assigns including affiliates and agents. This Express Consent applies to each such telephone number that you provide to us now or in the future and permits such calls. These calls and messages may incur access fees from your cellular provider.

| Lease Agreement # | 102020EL1-C03 |





**15. RETURN OF EQUIPMENT; RENEWAL:** If no default exists or has occurred under this Lease, you may, at the end of the original or any renewal term, purchase all (but not less than all) of the Equipment for a sum set forth on the front of this Lease, plus any applicable taxes. Unless the End of Term option price is **$101** or less, then at least **120** days prior to the end of the original term you must give us written notice via certified mail that you will purchase the Equipment or that you will return the Equipment to us. If you do not give us such written notice or if you do not purchase or deliver the equipment in accordance with the terms and conditions of this Lease, then this Lease shall automatically renew for a 6 month term, and thereafter renew for successive 3 month terms until you deliver the Equipment to us. During such renewal(s), the Rent shall be the highest monthly rate set forth in this Lease. We may cancel the renewal by sending you written notice **90** days prior to such renewal term. If the Fair Market Value Purchase Option has been selected, we will use our reasonable judgment to determine the Equipment's fair market value. This End of Term option may become null and void at our discretion if any Event of Default occurs or continues at any time during the original term of the Lease. Upon payment of End of Term option price, and if no default exists, we shall transfer our interest in the Equipment to you **"AS IS, WHERE IS"** without any representation or warranty whatsoever and this Lease will terminate. Provided you have given the required notice, and are not then in default you shall return the Equipment, freight and insurance prepaid, to us in good repair, condition, and working order, ordinary wear and tear excepted in a manner and to a location designated by us. Until the End of Term Option price is actually paid, you will be responsible to continue to pay rent at the highest monthly rate set forth in this lease.

**16. LATE CHARGE; FEES:** If any part of any Obligation is not made by you within five (5) days of its due date, you agree to pay us fifteen percent (15%) of each such late payment (to the extent permitted by law). You agree to pay us the late charge not later than one month following the date that the Obligation was first due. You agree to reimburse us for our reasonable expenses incurred in connection with this Lease, including, but not limited to, a documentation fee based on our current fee schedule which is available to you upon your request.

**17. ENTIRE AGREEMENT; CHANGES:** This Lease contains the entire agreement between you and us, and It may not be altered, amended, modified, terminated or otherwise changed except in writing and signed by both you and us. A limiting endorsement on a check or other form of payment will not be effective to modify the Obligations or any of the other terms and conditions of this Lease, and we may apply any payment received without being bound by such limiting endorsements.

**18. COMPLIANCE; NOTICES:** In the event you fail to comply with any terms of this Lease, we can, but we do not have to, take any action necessary to affect your compliance upon ten (10) days prior written notice to you. If we are required to pay any amount to obtain your compliance, the amount we pay plus all of our expenses in causing your compliance, shall become additional Obligations and shall be paid by you together with the next due Rent payment. If any notices are required under this Lease, they shall be sufficient if given personally or mailed to the address set forth in this Lease by certified or registered mail, postage prepaid. This Lease is for the benefit of and is binding upon you and your personal representatives, successors and assigns.

**19. CHOICE OF LAW; JURISDICTION:** This Lease and each Schedule shall be governed by the internal laws for the state in which Lessor's or Lessor's assignee's principal corporate offices are located. **IF THIS LEASE IS ASSIGNED, YOU AGREE THAT ANY DISPUTE ARISING UNDER OR RELATED TO THIS LEASE WILL BE ADJUDICATED IN THE FEDERAL OR STATE COURT WHERE THE ASSIGNEE'S CORPORATE HEADQUARTERS IS LOCATED AND WILL BE GOVERNED BY THE LAW OF THAT STATE. YOU HEREBY CONSENT TO PERSONAL JURISDICTION AND VENUE IN THAT COURT AND WAIVE ANY RIGHT TO TRANSFER VENUE.** However, you agree that we will have the right to commence any action in any Court having the proper jurisdiction for that action. You agree and consent that we may serve legal papers on you by registered or certified mail, which shall be sufficient to obtain Jurisdiction. **WE EACH WAIVE TRIAL BY JURY IN ANY ACTION BETWEEN US.**

**20. REPRESENTATIONS AND COVENANT OF LESSEE:** You represent that all financial and other information furnished to us was, at the time of delivery, true and correct. During the term of this Lease, you shall provide us with such interim or annual financial statements and filed tax returns as we request

**21. LESSEE GUARANTY:** You agree to submit the original master lease documents with the security deposit to Lessor or its assignee via overnight courier the same day of the facsimile transmission of the lease documents. Should we fail to receive these originals, you agree to be bound by the faxed copy of this agreement with appropriate signatures on the document. Lessee waives the right to challenge in court the authenticity of a faxed copy of this agreement and the faxed copy shall be considered the original and shall be the binding agreement for the purposes of any enforcement action under paragraph 12. If this document was sent electronically, you hereby warrant that this document has not been altered in any way. Any alteration or revision to any part of this or any attached documents will make all such alterations or revisions non-binding and void.

**22. COMPUTER SOFTWARE:** Not withstanding any other terms and conditions of the Agreement, you agree that as to software only: a) We have not had, do not have, nor will have any title to such software, b) You have executed or will execute a separate software license agreement and we are not a party to and have no responsibilities whatsoever in regard to such license agreement, c) You have selected such software and as per Agreement paragraph 5, WE MAKE NO WARRANTIES OF MERCHANTABILITY, DATA ACCURACY, SYSTEM INTEGRATION OR FITNESS FOR USE AND TAKE ABSOLUTELY NO RESPONSIBILITY FOR THE FUNCTION OR DEFECTIVE NATURE OF SUCH SOFTWARE.

Lease Agreement #     102020EL1-C03





Page 4 of 4     Initial

DocuSign Envelope ID: 79246CB1-91FB-4330-8E6D-BEE4CF3A7384



23422 MILL CREEK DRIVE, SUITE 200, LAGUNA HILLS, CA 92653
TOLL FREE 888.779.6989 | PHONE 949.225.1700 | FAX 949.225.1701

## EXHIBIT 'A' (EQUIPMENT DESCRIPTION)
### Lease Agreement # 102020EL1-C03

The following invoice(s) are referenced, and hereby incorporated, for the purpose of describing the equipment subject to Lease Agreement # 102020EL1-C03. By signing below, I, the lessee, acknowledge that I choose to lease the equipment listed on the invoice(s) per the payment schedule and the terms and conditions set out in Lease Agreement # 102020EL1-C03 which is the governing document to this lease regardless of the price and terms (if any) indicated on the invoice(s).

### *See invoices attached hereto as "EXHIBIT A1" and incorporated herein by this reference.*

| INVOICE # | DATE | VENDOR |
|---|---|---|
| JMN10292020-1 REV.1 | 10/29/2020 | EQUIPMENT DEPOT CALIFORNIA, INC. |

*Subject to credit approval, delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature.*

Lessee:
**ORANGE COURIER, INC.**

By:
Name: **EVELL TARA STANLEY**
Title: **PRESIDENT**
Date: **10/26/2020**

[EXHIBIT A1]





# New Sales Invoice

Invoice # **JMN10292020-1 Rev.1**     Date: ___10/29/20___

Customer #: _____

| | |
|---|---|
| **Company Name:** | **Envision Capital Group LLC** |
| **Bill to Address:** | 23422 Mill Creek Drive, Ste 200 |
| **City & Zip:** | Laguna Hills, CA 92653 |

| | |
|---|---|
| **Ship to Code:** | |
| **Ship to Name:** | **Orange Courier, Inc.** |
| **Ship to Address:** | 3731 W Warner Ave |
| **City & Zip:** | Santa Ana, CA 92704 |

P.O. #: _____

| Qty | Unit | Part/Serial # | Description | Unit Price | Selling Price |
|---|---|---|---|---|---|
| 1 | | B40VAC-6-2006A-12544 | Bendi B40VAC | $    84,674.00 | $    84,674.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

|  |  |
|---|---|
| **Sub Total** | **$    84,674.00** |

**<u>This is a RESALE transaction - Sales Tax Exempt</u>**

F. O. B.  **Destination**

**Sales Tax**

Terms -  **Lease**

**Comments -**

Per proposal dated 9/22/2020.

|  |  |
|---|---|
| **Total** | **$    84,674.00** |

**Los Angeles**
12393 Slauson Ave.
Whittier, CA 90606
Phone: (562) 949-1000
Fax: (562) 949-5984

**Canoga Park**
9430 Topanga Canyon Blvd, Suite 108
Chatsworth, CA 91311
Phone: (818) 349-1220
Fax: (818) 349-8797

**www.EQDEPOT.com**

Exhibit 4

# Statement

1-Lease #081219EL1-J01 (AEF)
2019 Landoll 440-50CA Trailer
Mo. Pmt. $2,165.31 + $324.65 late fees
Dates Past due for 11/1/2025,12/12026

Past Due Total $6,462.93
Late Fees $973.93
Grand Total $7,438.86*

*Plus fair market value of equipment to be determined.

_____

2-Lease #030620EL1-C02 (Quarterly Pmts.)
2013 Versa-Lift forklift 60-80 ATMB80-007 (SN 1819)
Quarterly Pmt. $19,189.23 + $2,878.38 late fees
Dates Past due for 9/15/2025,12/1/2025

Past Due Total $38,378.46
Late Fees $5,756.76
Grand Total $44,035.22*

*Plus fair market value of equipment to be determined.

_____

3-Lease #102020EL1-C03 (AEF)
Bendi B40VAC Forklift Purch Price
Mo. Pmt. $2,165.31 + $337.92 late fees
Dates Past due for 11/1/2025, 12/1/2025, 1/1/2026

Past Due Total $6,758.49
Late Fees $1,013.77
Grand Total $7,772.26*

*Plus fair market value of equipment to be determined.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

515 S. Flower St., 18th Floor, Los Angeles CA 90071

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (PERSONAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Eric Bensamochan eric@eblawfirm.us, G63723@notify.cincompass.com;services@infotrack.com;paulinab@eblawfirm.us; Luis Chaves luis@ksgklaw.com, fileserve@ksgklaw.com; Jennifer Witherell Crastz jcrastz@hrhlaw.com; William P. Fennell william.fennell@fennelllaw.com, wpf@ecf.courtdrive.com;hala.hammi@fennelllaw.com; naomi.cwalinski@fennelllaw.com;samantha.larimer@fennelllaw.com;office@fennelllaw.com;Fennell.WilliamP.B143386@notify.bestcase.com; D Max Gardner dmgardner@dmaxlaw.com; Marshall F Goldberg mgoldberg@glassgoldberg.com, jbailey@glassgoldberg.com; Alan Craig Hochheiser ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com; Sherry Anne Lear slearattorney@gmail.com; Noreen A Madoyan Noreen.Madoyan@usdoj.gov; Michael N Nicastro courtfiling@nicastropc.com; United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Orange Courier, Inc, 16222 Phoebe Ave., La Mirada, CA 90638, LOS ANGELES-CA

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| _____ | Luis F. Chaves | /s/ Luis F. Chaves |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.